# Exhibit Q

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEMEX EXPLORACIÓN Y PRODUCCIÓN, | § § § | |
| *Plaintiff*, | § § | |
| vs. | § § § | |
| BASF CORPORATION; MURPHY ENERGY CORPORATION; TRAMMO PETROLEUM, INC.; BIO-NU SOUTHWEST, INC. d/b/a VALLEY FUELS; US PETROLEUM DEPOT, INC.; DONALD P. SCHROEDER, JR.; ARNOLDO MALDONADO; JONATHAN DAPPEN; STEPHEN PECHENIK; TIMOTHY BRINK; CONTINENTAL FUELS, INC.; and HIGH SIERRA CRUDE OIL & MARKETING, LLC, successor to PETRO SOURCE PARTNERS, LP, | § § § § § § § § § § § § § § § | Civil Action No. 4:2010cv01997 |
| *Defendants*. | § | |

## BUSINESS RECORDS DECLARATION

I, Greg Westfall, declare under penalty of perjury that the following is true and correct:

1. "My name is Greg Westfall. I am over eighteen years of age, of sound mind, and I am in all ways competent to make this declaration. The statements contained herein are true and correct and are based upon my own personal knowledge.

2. I am the custodian of records for Murphy Energy Corporation.

3. Exhibits A–C, E, G–K, and O–Q—which are attached to Murphy Energy's Partial Motion for Summary Judgment—are records that are kept by Murphy Energy in the regular course of business; it was the regular course of business of Murphy Energy for an employee or representative of Murphy Energy with knowledge of the act, condition, or opinion recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soonafter. The records attached as Exhibits A–C, E, G–K, and O–Q to Murphy Energy's Partial Motion for Summary Judgment are the original or exact duplicates of the original."

Dated: 3/5/11

_____
Greg Westfall

# TRAMMO PETROLEUM, INC.



## CONDENSATE PURCHASE CONFIRMATION

Date:   January 8, 2009

To:   Murphy Energy Corporation
7 Grogans Park Drive
Suite 1
The Woodlands, TX 77380

Attention:   Gregory Westfall
Fax No:   281-292-3090

Buyer's Contract No:   OP090001
Seller's Contract No:

This is a confirmation of the agreement entered into on January 8, 2009 between Murphy Energy Corporation ("Seller" or "Delivering Party") and Trammo Petroleum, Inc. ("Buyer" or "Receiving Party"), for Seller to sell to Buyer the Brownsville Condensate ("Condensate") described below, under the terms and conditions set forth herein. This confirmation cancels and supersedes all prior agreements, understandings and negotiations regarding the transaction described below.

1.   **QUANTITY:** Approximately 40,000 total barrels of Condensate.

2.   **QUALITY:** The Condensate delivered hereunder shall be merchantable with the specifications set forth on Annex A attached hereto. Quality, quantity and gravity of Condensate delivered hereunder shall be determined in accordance with generally accepted industry practices in effect at the time and place of delivery using the latest A.S.T.M. or A.P.I. test methods. Volumes shall be corrected to 60 degrees Fahrenheit temperature in accordance with the latest A.S.T.M. test methods and the latest edition of A.P.I. volume correction tables, and full deductions shall be made for all basic sediment and water and other impurities. In the event Seller tenders Condensate not of the quality specified, without prejudice to any other remedy, Buyer may accept delivery subject to a reduction in price to compensate Buyer for the reasonable charges resulting therefrom, or Buyer may elect not to accept delivery.

3.   **DELIVERY LOCATION:** Seller shall sell and deliver the Brownsville Condensate DES (Delivered Ex Ship) Port Arthur or Sun Nederland, at Buyer's option, into tankage designated by Buyer (the "Delivery Location") via Seller's barge. Buyer shall designate and procure for Seller's barge one safe port and one safe and always accessible berth, free of wharfage and dockage fee. Buyer shall be responsible for any shifting costs incurred by Seller, and all time used until disconnection of hoses shall count as laytime or time on demurrage.

4.   **DELIVERY TITLE AND RISK OF LOSS:** Delivery of Condensate to Buyer shall be effected and title and risk of loss to Condensate shall pass to Buyer as the Condensate passes the last permanent outlet flange of the Seller's delivering barge at the Delivery Location. Except to the extent inconsistent herewith, this contract shall be governed by the provisions of INCOTERMS 2000 for DES Sales. Seller shall be responsible for all transportation to the Delivery Location and Buyer shall be responsible for all transportation after receipt of Condensate at the Delivery Location.

5.   **PRICE:** The price to be paid by Buyer to Seller for the Condensate delivered and accepted hereunder during each calendar month shall be the arithmetic average of the daily settlement price for the "West Texas Intermediate" futures contract reported by the New York Mercantile Exchange (NYMEX) for the calendar (run) month of delivery (excluding weekends and US holidays), plus $1.00 US Dollars

Page 1

# TRAMMO PETROLEUM, INC.



## CONDENSATE PURCHASE CONFIRMATION

per barrel. For pricing purposes only, all Condensate delivered hereunder during any calendar month shall be considered to have been delivered in equal daily quantities during such month.

Prepayments will include a cost of less $.30 per barrel (deducted from the above formula) paid on 90% of the barrels reported on the load report submitted by a Certified Independent Inspection Company.

6. **DELIVERY PERIOD:** Subject to the other terms and provisions hereof, deliveries hereunder shall be in the month of January 2009. In the event the discharge of the condensate is commenced in late January but the discharge is not completed until February 2009, then the futures contract for the NYMEX shall be February 2009.

7. **PAYMENT:** Buyer agrees to make a "True-up Payment" less any prepaid amounts on the 20th day of the month following the month of delivery via wire transfer in immediately available funds as directed by Seller's invoice. Payment shall be made against the following documents: Seller's invoice; original bill of lading signed by the vessel's master, stating the quantity of the Product loaded on board the vessel at the load port; and a copy of the inspection report of weight and analysis issued by an independent surveyor at discharge port (pursuant to Section 17 below). If the payment due date falls on a Sunday or a Monday on which Banks in New York City are closed, payment will be made on the following business day. If the payment due date falls on a Saturday or day on which banks in New York City are closed other than a Monday, payment will be made on the preceding business day. If Buyer fails to make any payment when due, Seller shall have the right to charge interest on the amount of the overdue payment at a rate two percent per annum higher than the published prime lending rate of JP Morgan Chase Bank on the date payment was due.

8. **FORCE MAJEURE:**
(a) No failure or omission by either party to carry out or to observe any of the terms and conditions of this Agreement, except for the obligation to make payment due hereunder, shall give rise to any claim against the party in question or be deemed a breach of this Agreement if such failure or omission arises from war, riots, insurrections, fire, explosions, sabotage, strikes and other labor or industrial disturbances, acts of God or the elements, governmental laws, regulations or requests, acts in furtherance of the International Energy Program, disruption or breakdown of production or transportation facilities, delays of pipeline carriers in receiving or delivering Condensate tendered, or by any other cause reasonably beyond the control of such party (hereinafter referred to as Force Majeure"). Force Majeure shall not include a failure to perform obligations solely as a result of the fact that to do so will result in economic loss or hardship to a party. If a party is prevented from performing its obligations hereunder as a result of Force Majeure, such party shall promptly notify the other party thereof describing the nature and the expected duration of such event. The time for Seller to make or for Buyer to receive delivery hereunder shall be extended during any period in which delivery or receipt is delayed or prevented by Force Majeure. If the delivery or receipt is delayed or prevented for a period beyond the end of the Initial Delivery Period or any Subsequent Delivery Period, as applicable, either party may terminate this Agreement with respect to such delivery upon written notice to the other party.
(b) The Seller acknowledges that the Buyer is not the end user of the Condensate. Any force majeure condition affecting the Buyer's customer shall constitute a force majeure condition affecting the Buyer.

9. **WARRANTY:** Seller hereby warrants good title to the Condensate delivered by Seller to Buyer, the right to sell the same, and that the Condensate is free from all liens, encumbrances and adverse claims. Seller agrees to pay, or cause to be paid or delivered in kind to the parties entitled thereto all royalties, overriding royalties or like charges assessed against the Condensate or the value thereof. Seller shall protect, defend, indemnify and hold Buyer harmless from and against all suits, actions, debts, accounts,

Page 2

# TRAMMO PETROLEUM, INC.



## CONDENSATE PURCHASE CONFIRMATION

damages, costs, losses and expenses (including attorney's fees) arising from or out of any adverse claims of any nature, including royalty claims, of any and all persons to or against the Condensate. In the event any adverse claim of any character whatsoever is asserted with respect to any of the Condensate, Buyer may, as security for the performance of Seller's obligations with respect to such claim, suspend payments for Condensate hereunder up to the amount of such claim, without being liable for interest, until such claim has been finally determined, or until Seller furnishes a bond to Buyer in an amount and with sureties satisfactory to Buyer.

10. **TAXES:**
(a) The Price under this Agreement includes full reimbursement for, and the Delivering Party is liable for and shall pay, cause to be paid or reimburse the Receiving Party if the Receiving Party has paid, any ad valorem, property, occupation, severance, production, extraction, first use, first or subsequent purchaser, conservation, gathering, pipeline, utility, gross production, gross receipts, gross income, oil revenue, oil import, privilege, sales, use, consumption, BTU, energy, excise, lease transactions and any other taxes, governmental charges, assessments, licenses, fees or permits, or increase thereon, other than taxes based on net income or net worth (collectively, "Taxes") applicable to the Condensate sold hereunder or imposed, assessed or collected at or upstream of the Delivery Locations. Delivering Party shall indemnify, defend and hold the Receiving Party harmless from any liability against all such Taxes.
(b) The Price does not include reimbursement for, and the Receiving Party is liable for and shall pay, cause to be paid or reimburse Delivering Party if Delivering Party has paid, any Taxes applicable to the Condensate sold hereunder imposed, assessed or collected downstream of the Delivery Locations. Receiving Party shall indemnify, defend and hold the Delivering Party harmless from any liability against all such Taxes.
(c) If either party becomes subject to any federal BTU, energy, environmental, or consumption Tax enacted after the date of this Agreement, then, notwithstanding anything to the contrary contained herein, (i) either party may terminate this Agreement at any time by notice in writing to the other party and (ii) in the event neither party elects to terminate this Agreement, the Receiving Party will assume responsibility for payment of such tax on the Condensate purchased hereunder.
(d) Both parties shall use reasonable efforts to administer this Agreement and implement the provisions thereof in accordance with their intent to minimize or reduce Taxes. If the Receiving Party claims exemption from any tax, it shall provide the Delivering Party a certificate of exemption or other reasonable satisfactory evidence of exemption from any Taxes, and each party agrees to cooperate with the other party in obtaining any such exemption.

11. **NON-PERFORMANCE:** Notwithstanding any other provisions of this Agreement, in the event either party (the "Non-Performing Party") shall (i) default in the payment or performance of any obligation to the other party under this or any other contract after two (2) business days' notice of such failure (ii) file a petition or otherwise commence or authorize the commencement of a proceeding or case under any bankruptcy, reorganization, or similar law for the protection of creditors or have any such petition filed or proceeding commenced against it (iii) otherwise become bankrupt or insolvent (however evidenced), (iv) be unable to pay its debts as they fall due, or (v) fail to give adequate security for, or assurance of, its ability to perform its obligations hereunder or thereunder within forty-eight (48) hours of a reasonable request therefore, then in any such event the other party (the "Performing Party") shall, in addition to all other rights and remedies available to the Performing Party, have the right immediately to terminate this Agreement by notice to the Non-Performing Party. The Performing Party's rights under this provision shall be in addition to, and not in limitation or exclusion of, any other rights which the Performing Party may have (whether by agreement, operation of law or otherwise), including any rights and remedies under the Uniform Commercial Code. The Non-Performing Party shall indemnify and hold the Performing Party harmless from all costs and expenses, including reasonable attorneys fees, incurred

# TRAMMO PETROLEUM, INC.



## CONDENSATE PURCHASE CONFIRMATION

in the exercise of any remedies hereunder. If a default occurs, the Performing Party may, without limitation on its right under this provision, set off amounts which the Non-Performing Party owes to it against any amounts which it owes to the Non-Performing Party (whether hereunder, under a forward contract or otherwise and whether or not then due). The parties agree that this contract constitutes a "forward contract" for purposes of Section 556 of the U.S. Bankruptcy Code.

12.  **LIMITATION OF LIABILITY:** Neither party shall be liable to the other for indirect, consequential, punitive, special, treble or exemplary damages of any type under any circumstances.

13.  **GOVERNING LAW:** This Agreement shall be governed by and construed under the domestic law of the State of Texas, without reference to conflict of law rules.

14.  **ARBITRATION:** Any dispute arising out of or in connection with the Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by binding arbitration in accordance with the American Arbitration Association Commercial Arbitration Rules. The number of arbitrators shall be three, each party having the right to appoint one arbitrator, who shall together then appoint a third neutral arbitrator within 30 days in accordance with the Rules. The place of arbitration shall be Houston, Texas, USA. The language to be used in the arbitral proceedings shall be in English. The parties hereby expressly waive any right of appeal to any court having jurisdiction on any question of fact or law. There will be no written transcript or record of the arbitration proceeding. The arbitrators will not render a written opinion explaining their award. The arbitrators shall have no authority to award attorneys' fees. The arbitrators' orders and decisions may be enforceable in, and judgment upon any award rendered in the arbitration proceeding may be confirmed and entered by, any court having jurisdiction. The parties agree that all arbitration proceedings conducted hereunder and the decision of the arbitrators shall be kept confidential and not disclosed, except: to a party's affiliates, accountants, and lawyers, or to the extent necessary to enforce the decision.

15.  **SUBMISSION TO JURISDICTION:** Each party hereby consents to the exclusive personal jurisdiction of the courts located in Harris County, Texas, USA; for all purposes in connection with this Agreement.

16.  **MEASUREMENTS:** Quantity to be based on receiving shore tank(s) upgages at disport, net water and sediment. All receiving shore tanks shall be static and contain sufficient oil, prior to receipt, to ensure roofs are afloat and above the critical zone. The High Point Vent Method will be used at Pt. Arthur and Line Displacement at Sun Nederland to ensure lines are full prior to discharge. Seller to provide final gross volume loaded within 48 hours of vessel departure.

17.  **INSPECTIONS:** A mutually agreed independent inspector shall determine the quantity and quality of the Condensate discharged per the terms of this Agreement. All discharge port inspection costs to be shared 50/50. Independent inspector's findings shall be binding on both Buyer and Seller, absent fraud or errors and omissions.

18.  **SCHEDULING:** 10 days prior to the start of the delivery window, Seller will nominate to Buyer a 5 day delivery window. On B/L date, Seller will narrow the delivery window to a 3-day window. Each day thereafter, Seller will provide Buyer with an updated ETA.

19.  **NOMINATION AND VETTING:** Barge to be nominated by Seller, and subject to vetting and approval by the discharge port. For nomination and scheduling contact Frank Newman, Trammo

Page 4

# TRAMMO PETROLEUM, INC.



## CONDENSATE PURCHASE CONFIRMATION

Petroleum, 1111 Bagby, Suite 1920, Houston, Texas 77002, e-mail Frank.Newman@trammopetroleum.com.

20. **MARTIME CONDITIONS; LAYTIME AND DEMURRAGE:** Maritime conditions shall be in accordance with the governing charter party of Seller's barge. Allowed laytime shall be calculated as 2,500 barrels per hour + 3 hours. Buyer agrees to pay demurrage incurred at $295.00 per hour for all hours in excess of the allowed laytime provided to Buyer at the Delivery Point. Any demurrage claims/invoices should be addressed to Frank Newman, Trammo Petroleum, Inc., 1111 Bagby, Suite 1910, Houston, TX 77002, e-mail frank.newman@trammopetroleum.com and must be received no later than sixty (60) days after completion of discharge. Claims received after sixty days will not be honored or accepted.

21. **INVOICES AND ACCOUNTING CORRESPONDENCE:** Invoices and any other notices or documentation shall be in writing and, unless otherwise stated, may be given in person or by courier, e-mail or fax, to the recipient at the address set forth below. Any such notice will be deemed to be given: (a) if delivered in person, at the time of delivery; (b) if sent by courier, upon receipt, as evidenced by a delivery notice from the courier; (c) if sent by fax, at the time specified in the fax transmission report of full transmission, free of errors, to the recipient's fax number; or (d) if sent by e-mail, when received.

| SELLER: | BUYER |
|---|---|
| Murphy Energy Corporation<br>7 Grogans Park Drive<br>Suite 1<br>The Woodlands, TX 77380<br>Fax: 281-292-3090<br>Attention: Greg Westfall | Trammo Petroleum, Inc.<br>1111 Bagby – Suite 1920<br>Houston, TX 77002<br>Fax: (713) 650-6650<br>Email: Houston@trammopetroleum.com |

Either party shall have the right to change the address by notice to the other.

22. **GENERAL TERMS:** Conoco Inc's GT&C dated January 1, 1993 are hereby incorporated by reference to the extent not inconsistent with the terms of this Agreement.

Unless Seller gives Buyer written notification of objection to the contents hereof within ten (10) days after receipt of same, the terms above shall be deemed to be an accurate record of the agreement between Buyer and Seller. The effectiveness of this Agreement is not conditioned upon Seller's execution or return hereof, nor is return of this Agreement necessary for this Agreement to become binding and enforceable.

# TRAMMO PETROLEUM, INC.



## CONDENSATE PURCHASE CONFIRMATION

Please execute below and return this Agreement by fax or email. Thank you.

                                  Yours truly,

                                  TRAMMO PETROLEUM, INC.

                                  By: _____
                                  Name: Don Schroeder
                                  Title: President

AGREED TO AND ACCEPTED:

Gregory Westfall
By: _____
Name: _____
Title: _____