**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| PEMEX EXPLORATIÓN Y PRODUCCIÓN, | § § § § | |
| *Plaintiff*, | § § | Consolidated Cases: |
| v. | § § § | No. 4:10-CV-01997 No. 4:11-CV-02019 |
| BASF CORPORATION, ET AL., | § § § | Hon. Sim Lake |
| *Defendants.* | § | |

---

**DEFENDANT SAINT JAMES OIL, INC.'S AMENDED MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(2)**

---

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL BACKGROUND .............................................................................. 2

III.  ARGUMENT ...................................................................................................... 5

      A.    St. James Has No Direct Contacts With This State Sufficient to Confer General or Specific Jurisdiction. ......................................................... 5

      B.    Big Star's Contacts with Texas Cannot Be Imputed to St. James for Jurisdictional Purposes Under an "Alter Ego" Theory. ..................................... 9

            1.    "Alter Ego" Jurisdiction Can Lie Only Where the Non-Texas Parent Exerts So Much Control Over the Texas Subsidiary that They Are But One and the Same Company. ........................................... 10

            2.    PEP Has Not, and Cannot, Overcome the Jurisdictional Presumption of Separateness Between St. James and Big Star. ............ 13

      C.    PEP's Allegation that Big Star is an "Expired" Texas Partnership Does Not Create Personal Jurisdiction Over St. James. .............................................. 16

      D.    PEP Is Not Entitled to Additional Jurisdictional Discovery Before St. James's Jurisdictional Challenge is Ripe for Adjudication. ............................... 17

IV.   CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Alpine View Co. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) ............................................................................... 13, 19

*BMC Software Belg., N.V. v. Marchand*,
  83 S.W.3d 789 (Tex. 2002) ................................................................................... 11, 16

*Cannon Manufacturing Co. v. Cudahy Packing Co.*,
  267 U.S. 333, 45 S. Ct. 250, 69 L. Ed. 634 (1925) .................................................... 11

*Carlson Mfg. v. Smith*,
  179 S.W.3d 688 (Tex. App.—Beaumont 2005, no pet.) .................................................. 12, 16

*Construction Aggregates v. Senior Commodity Co.*,
  860 F. Supp. 1176 (E.D. Tex. 1994) ............................................................................. 6, 8

*CSR, Ltd. v. Link*,
  925 S.W.2d 591 (Tex.1996) ........................................................................................ 6

*Dickson Marine, Inc. v. Panalpina, Inc.*,
   179 F.3d 331 (5th Cir. 1999) ...................................................................................... 12

*EsNtion Records, Inc. v. JonesTM, Inc.*,
  No. 3:07-CV-2027-L, 2008 U.S. Dist. LEXIS 46926 (N.D. Tex. June 16, 2008) ....... 11, 15, 19

*Fielding v. Hubert Burda Media, Inc.*,
  415 F.3d 419 (5th Cir. 2005) ..................................................................................... 17

*Freudensprung v. Offshore Tech. Servs.*,
  379 F.3d 327 (5th Cir. 2004) ..................................................................................... 12

*GE Capital Corp. v. Posey,*
  No. 4:02-CV-319-Y, 2006 U.S. Dist. LEXIS 16170 (N.D. Tex. Mar. 20, 2006).............. 6, 8, 9

*Gonzalez v. Lehtinen*,
  No. 13-06-441-CV, 2008 Tex. App. LEXIS 1889 (Tex. App.—Corpus Christi
  Mar. 13, 2008, pet. denied) ........................................................................................ 12

*Guzman v. Mem'l Hermann Hosp. Sys.*,
  No. H-07-3973, 2008 U.S. Dist. LEXIS 101781 (S.D. Tex. Dec. 17, 2008) ............................ 6

*Hargrave v. Fibreboard Corp.*,
  710 F.2d 1154 (5th Cir. 1983) ............................................................................ 10, 11, 13, 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)..........................................................8

*House v. 22 Texas Services, Inc.*,
   60 F. Supp. 2d 602 (S.D. Tex. 1999) ...................................................................................10

*In Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) .............................................................................................7

*Jackson v. Tanfoglio Giuseppe S.R.L.*,
   615 F.3d 579 (5th Cir. 2010) ..............................................................................................10

*Johnson v. Verizon Communs., Inc.*,
   No. 3: 10-CV-01764-B, 2011 U.S. Dist. LEXIS 38387 (N.D. Tex. Apr. 7, 2011) ..............7, 19

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
   213 F.3d 841 (5th Cir. 2000) .........................................................................................15, 18

*King v. Hawgwild Air, LLC*,
   No. 3:08-CV-0153-L, 2008 U.S. Dist. LEXIS 49887 (N.D. Tex. June 27, 2008) ....................7

*Kisiel v. RAS Sec. Corp.*,
   No. 3:01-CV-294-X, 2001 U.S. Dist. LEXIS 8823 (N.D. Tex. June 26, 2001)............8, 10, 12

*Milltronics Inc. v. Hawk Am.*,
   No. 3:92-CV-761-X, 1993 U.S. Dist. LEXIS 20205 (N.D. Tex. Nov. 23, 1993) ...................17

*Paramount Petroleum Corp. v. Taylor Rental Ctr.*,
   712 S.W.2d 534 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.) .............................12

*PHC-Minden, L.P. v. Kimberly-Clark Corp.*,
   235 S.W.3d 163 (Tex. 2007)......................................................................................11, 12, 16

*Steadfast Ins. Co. v. Pop Rests., LLC*,
   No. 4:09-CV-3148, 2010 U.S. Dist. LEXIS 80670 (S.D. Tex. Aug. 10, 2010) ........................7

*United Galvanizing Inc. v. Imperial Zinc Corp.*,
   No. H-08-05512008, U.S. Dist. LEXIS 87038 (S.D. Tex. Oct. 27, 2008) ...............................19

*Wilson v. Belin*,
   20 F.3d 644 (5th Cir. 1994) ..................................................................................................6

## Statutes

Tex. Civ. Prac. & Rem. Code § 17.042 ........................................................................................6

## Rules

Federal Rules of Civil Procedure 12(b) ..........................................................................1, 2, 17, 19

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and the December 2, 2011 Order of the Court, Defendant Saint James Oil, Inc. ("St. James" or "Movant") files this amended motion to dismiss the complaint of Plaintiff PEMEX Exploracion y Produccion ("PEP" or "Plaintiff") for lack of personal jurisdiction.

## I.    INTRODUCTION

After already having brought one lawsuit naming a slate of American defendants whom PEP alleges to have participated—whether knowingly or not—in a "conspiracy" to trade in hydrocarbons allegedly stolen from it in Mexico, Plaintiff brought an almost identical lawsuit against a new round of American defendants, including Movant St. James, Big Star Gathering, Ltd. ("Big Star"), and its principal, James Jensen (together, the "Big Star Defendants"), trying to cast the net even wider than before.  With respect to Big Star, in particular, PEP basically alleges only that it engaged in some unidentified transactions with a person who later pled guilty to engaging in the purchase and sale of stolen natural gas condensate.  With respect to St. James, however, the allegations are even thinner: Plaintiff alleges nothing more than the fact that St. James—a Nevada oil and gas exploration and production company with drilling operations in Colorado and run out of Utah—is a partner in Big Star, which is a Texas limited liability partnership engaged in daily purchases and sales of crude oil in Texas.  Plaintiff nakedly asserts that the companies must therefore be each other's alter egos.  In sum, Plaintiff has not alleged that St. James was involved in ***any*** of the transactions underlying this lawsuit other than by allegedly using Big Star as its corporate "alter ego," and PEP does not allege even one ***fact*** in support of its theory.

This is simply insufficient to show personal jurisdiction over St. James.  First, St. James has no continuous or systematic contacts with Texas, which PEP appears to concede.  Second, PEP's conclusory assertion that the two companies are each other's "alter egos" cannot impute

1

Big Star's contacts with this state to St. James for jurisdictional purposes, given that the two companies are engaged in separate businesses and maintain separate corporate functions, day-to-day decision making, finances, accounting, and operations. As Plaintiff's prior filed opposition to St. James's original motion to dismiss makes clear, St. James has been mistakenly named in this lawsuit as a result of an error by PEP, who is fully aware that Movant had nothing to do with the alleged transactions underlying this dispute. Accordingly, PEP's claims against St. James should be dismissed under Rule 12(b)(2).

## II.    FACTUAL BACKGROUND

In June of 2010, PEP sued several U.S. companies and citizens, including BASF Corporation, alleging that they had participated in a scheme to trade in Mexico's natural gas condensate produced from the Burgos Field and stolen by members of organized crime (the "Original Suit"). On May 29, 2011, Plaintiff brought a second action, this time making the same allegations against a new round of U.S. companies and citizens, including the Big Star Defendants (the "Second Suit"). *See* Complaint in Second Suit (Dkt. No. 1 in Case No. 4:11-CV-02019) ("Compl."). With respect to Big Star—whose Texas contacts PEP apparently seeks to impute to St. James—PEP asserts only the following:

- Big Star, an expired Texas limited liability partnership headquartered in George West, Texas, "voluntarily joined the conspiracy to market and distribute stolen PEP condensate" Compl. ¶¶ 8, 64, by purchasing some unidentified amount of condensate from Y Oil & Gas—"a company knowingly involved in the scheme through its owner, Arnoldo Maldonado," who has pled guilty to conspiracy to sell/receive stolen Mexican condensate, *id.* ¶ 65—and by selling some unidentified amount of condensate to "larger companies such as AGE Refining," located in San Antonio, Texas and potentially to Defendant Plains." *Id.*

- In furtherance of the alleged conspiracy, as to each unidentified purchase and sale of PEP condensate, Big Star: "(a) defrauded the [unidentified] ultimate purchaser of the source and patrimony of the condensate . . ., (b) knowingly engaged in transactions involving stolen goods . . ., (c) committed money laundering. . ." *Id.* ¶ 67.

2

- Big Star (i) knew that some unidentified amount of condensate it purchased and resold was stolen, or (ii) consciously disregarded this fact, or (iii) should have known of this fact. *Id.* ¶ 66. Big Star also must have known that for the larger conspiracy to succeed, "additional criminal conduct was needed to conceal the conspiracy from PEP and from US and Mexican authorities, including the bribery of government officials and the forging of documents." *Id.* ¶ 68.[1]

Importantly, PEP makes **only** the following allegations with respect to ***St. James in particular***—all of which are either factually inaccurate or improperly conclusory—in an effort to impose liability for Big Star's alleged wrongdoing:

> Big Star Gathering LTD L.L.P. ("Big Star") is an expired Texas limited liability partnership with its principal place of business in George West, Texas, and is a fully-owned subsidiary of Saint James Oil, Inc., a Nevada corporation, with its principal place of business in Sandy, Utah ("St. James."). St. James wholly owns and operates Big Star.
>
> . . .
> Saint James Oil, Inc. ("St. James") is a Nevada corporation with its principal place of business in Sandy, Utah. St. James is also included in the term "Big Star."
>
> . . .
> Big Star is owned and operated by St. James, which in turn is owned and operated by Jensen. Big Star's status as a Texas corporation has been lost, and therefore St. James is liable for its actions. Furthermore, St. James and Jensen are individually liable for Big Star's actions because no corporate distinction should be recognized among them; they are and were alter egos, in part because Big Star was utilized for an illegal purpose and as a sham to perpetuate a fraud.

*Id.* ¶¶ 8, 15, 63.[2]

Because these allegations were insufficient to create a prima facie case of jurisdiction over St. James (and because they failed to establish vicarious liability, as a matter of law), St. James moved to dismiss PEP's claims under Rules 12(b)(2) and (6) on August 8, 2011. *See* St.

---

[1] Plaintiff has also sued an officer of Big Star, Defendant James Jensen, summarily alleging that he "actively participated in, and directed, Big Star's conduct." Compl. ¶ 63.

[2] In responding to St. James' original motion to dismiss, PEP argued that it had defined the term "Big Star" to include all of Big Star, St. James, and James Jensen. However, as the above excerpts from the Complaint make clear, PEP defined "Big Star" inconsistently, at times obviously referring merely to the Texas partnership that actually does engage in the purchase and sale of hyrdrocarbons in Texas. *See, e.g.*, *id.* ¶ 8 ("Big Star Gathering LTD L.L.P. ('Big Star') is an expired Texas limited liability partnership. . . .").

James Mtn. to Dismiss (Dkt. No. 8 in Case No. 4:11-CV-2019).  When PEP filed its consolidated opposition to the various then-pending motions to dismiss, it dedicated a mere ***two pages*** to St. James's jurisdictional challenge and did not supplement the above allegations, offer any evidence to create a prima facie case for jurisdiction over St. James, or specify any discovery it needed in order to do so.   *See* PEP's Consol. Opp. to Defs' Mtns. to Dismiss (Dkt. No.  19 in Case  No.  4:11-CV-2019) ("PEP Opp.") at 19-20.[3]   Since August, however, PEP issued interrogatories and document requests to each of the Big Star Defendants, which included some jurisdictional discovery, to which each of the Big Star Defendants responded.   PEP also issues a document subpoena to non-party Saint James Energy Operating, Inc. ("St. James Energy")— another partner in Big Star that PEP intends to add a defendant in this lawsuit—in response to which St. James Energy has produced documents.   In effect, PEP has now had four months to take—and has taken—"jurisdictional" discovery to discern what, if any, contacts St. James has with Texas, as well as its relationship with Big Star and St. James Energy.

Upon consolidation of the Second Suit with the Original Suit on October 4, 2011, this Court denied all then-pending motions to dismiss that had been filed by the defendants in the Second Suit, citing its prior ruling in June 2011 that no dispositive motions would be filed in this instant case before May 18, 2012 (unless they challenged the Court's subject matter jurisdiction), once discovery was closed.  *See* 10/4/11 Order & Opinion (Dkt. No. 287) at 13-14 (citing Dkt. No. 219 at 4).   St. James' original motion to dismiss was thereby denied in its entirety.  St. James thereafter moved for the Court to reconsider its denial of its jurisdictional challenge and to modify the scheduling order to allow for dispositive motions going to personal jurisdiction to be

---

[3] To be fair, PEP did ***attempt*** to provide evidence of St. James's involvement in some of the transactions in question, but this effort failed.  As discussed in detail in part III, below, PEP inadvertently submitted evidence relating to a third party with a ***similar*** name to St. James Oil, Inc.—namely, Saint James Energy Operating, Inc.— which third party entity PEP now seeks to add as a new defendant in the lawsuit, apparently recognizing the difference between that entity and Movant.

filed at any time.  *See* (Dkt. No. 298).   In a hearing on December 2, 2011, the Court granted St. James's request and requested that it re-file it personal jurisdictional challenge as an "amended" motion to dismiss.

## III.   ARGUMENT

St. James—a Nevada oil and gas exploration and production ("E&P") company headquartered in Utah and drilling wells exclusively in Colorado—simply does not have the requisite continuous and systematic contact with Texas, or a specific contact relevant to this lawsuit, to be subject to this Court's jurisdiction.  Perhaps recognizing this fact, PEP appears to allege that the contacts of Big Star—a Texas partnership engaged in the business of purchasing crude oil at the wellhead for resale, with its headquarters and operations exclusively in Texas— should be imputed to St. James for jurisdictional (and liability) purposes, because (i) St. James is allegedly Big Star's "alter ego," and (ii) at certain points in the Complaint, PEP intended the term "Big Star" to *by definition* include the three separate entities/persons of St. James, Big Star, and James Jensen.  However, PEP simply cannot make a prima facie case for alter ego liability with respect to Big Star and St. James, which operate completely separately from one another. Nor is the false allegation that Big Star is an expired Texas partnership relevant to establishing personal jurisdiction over St. James, a partner of Big Star.  Nor, for that matter, does a convenient definition of the term "Big Star" in Plaintiff's Complaint to include St. James excuse Plaintiff from having to make a prima facie case of jurisdiction over St. James in particular. Accordingly, St. James should be dismissed for lack of personal jurisdiction.

### A.   St. James Has No Direct Contacts With This State Sufficient to Confer General or Specific Jurisdiction.

To establish that a court has personal jurisdiction over a party, the plaintiff must show that: (1) the defendant has "purposefully availed himself of the benefits and protections of the

forum state by establishing minimum contacts," and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citations omitted). Minimum contacts may be established by showing contacts that are specific to the dispute, or contacts that are "continuous and systematic," giving rise to general jurisdiction. *Id.* Because the Texas long-arm statute reaches "as far as the federal constitutional requirements of due process will allow," the statute is satisfied if the exercise of personal jurisdiction comports with federal due process. *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996) (orig.proceeding); Tex. Civ. Prac. & Rem. Code § 17.042.

Plaintiff does not allege that St. James in particular has had ***any*** contacts with the state of Texas other than being a partner of Big Star, a Texas limited liability partnership that PEP alleges to be expired. *See id.* ¶¶ 8, 15, 63. Importantly, mere fact that St. James is a partner in a Texas limited liability partnership—whether expired or not—is insufficient to create general jurisdiction over St. James. *See Guzman v. Mem'l Hermann Hosp. Sys.,* No. H-07-3973, 2008 U.S. Dist. LEXIS 101781, at *34-36 (S.D. Tex. Dec. 17, 2008) (finding no general jurisdiction where defendant formed and registered five Texas partnerships*,* was their attorney-in-fact, and provided administrative services to them in Texas); *GE Capital Corp. v. Posey,* No. 4:02-CV-319-Y, 2006 U.S. Dist. LEXIS 16170, at *11 (N.D. Tex. Mar. 20, 2006) (holding that owning limited partnership interest in Texas real property was insufficient to create general jurisdiction); *Construction Aggregates v. Senior Commodity Co*., 860 F. Supp. 1176, 1179-1180 (E.D. Tex. 1994) (holding that being partner in Texas limited partnership owning real estate in Texas is insufficient to create general jurisdiction). Indeed, PEP ***concedes*** the absence of general jurisdiction over St. James. *See* PEP Opp. at 19 ("PEP notes it is not claiming that there is

general jurisdiction over Saint James in this Court. Jurisdiction over Saint James is premised on Saint James' Texas conduct.").

In the context of partners and partnerships, questions of liability and jurisdiction are approached differently: the Court must assess St. James's contacts with this state independent of its status as a partner in a Texas limited liability partnership—which relationship is relevant only to the liability issue. *See Steadfast Ins. Co. v. Pop Rests., LLC*, No. 4:09-CV-3148, 2010 U.S. Dist. LEXIS 80670, at *25-26 (S.D. Tex. Aug. 10, 2010) (holding that there can be no "personal jurisdiction over defendants who retain some sort of joint liability, such as a partnership or joint tortfeasor liability, where some independent minimum contacts apart from the joint liability are not shown"); *see id*. at *21-25 (citing *In Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990) (affirming finding of no personal jurisdiction over individual law partners in legal malpractice case and rejecting plaintiff's argument that "because the liability of the partnership would establish joint and several liability of each individual partner, jurisdiction over the partnership establish[ed] jurisdiction over the partners" because "liability depends on the relationship between the plaintiff and defendants and between the individual defendants," while personal "jurisdiction depends only upon each defendant's relationship with the forum")); *cf. King v. Hawgwild Air, LLC*, No. 3:08-CV-0153-L, 2008 U.S. Dist. LEXIS 49887, at *14 (N.D. Tex. June 27, 2008) ("Personal jurisdiction over an LLC does not automatically extend to LLC members."). Given that merely being a partner in a Texas partnership is insufficient to confer personal jurisdiction, PEP must rely on St. James's other "contacts" with this state, but this Nevada corporation with its principal place of business in Sandy, Utah (*see* Compl ¶ 15; Declaration of James Jensen ("Jensen Decl.") ¶¶ 2, 4) simply lacks sufficient contacts with

Texas.  St. James has no offices in Texas, has no employees here, owns no real property here[4], and has no operations—or other continuous presence—in this state.  *See* Jensen Decl. ¶¶ 2, 7. Its only relevant connection to Texas is that it is a partner of Big Star, a Texas limited liability partnership in which St. James owns a 99% ownership interest.  *See id*. ¶ 3.  As explained above, however, this simply is not a "contact" sufficient to confer jurisdiction over St. James.

To the extent that PEP relies on its conclusory "conspiracy" allegations, or its allegation that Big Star was used to commit a "fraud," to claim this Court has specific jurisdiction over St. James, this argument must be rejected.  PEP's naked allegations of a "conspiracy" or plan to defraud that merely lump together Big Star and St. James as one (by literally defining "Big Star" to include St. James, *see* Compl. ¶ 15) are insufficient to create personal jurisdiction over St. James: PEP has not alleged that St. James, in particular, committed any wrongdoing ***in Texas***. *See Kisiel v. RAS Sec. Corp*., No. 3:01-CV-294-X, 2001 U.S. Dist. LEXIS 8823, at *10 (N.D. Tex. June 26, 2001) (taking as true plaintiffs' allegations that out-of-state company knowingly received and held Texas defunct company's assets, there was still no allegation of involvement in Texas in torts underlying suit; "General fraud and conspiracy allegations, without suggestion of a single activity by [the Defendant] which was a part of this alleged conspiracy or fraud and which took place in Texas, will not support the Court's exercise of personal jurisdiction.")

---

[4] The only contact St. James has had with Texas outside of its status as a partner of Big Star is that the company is a passive investor in three oil wells located in Texas by virtue of owning royalty or non-operating working interests.  Jensen Decl. ¶ 7.  Big Star has no connection with these well interests.  *Id*.  Because this lawsuit has nothing to do with these leases, they do confer specific jurisdiction over St. James in this case.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) (defining specific jurisdiction as "arising out of or related to the defendant's contacts with the forum.").  Nor do these miscellaneous leases constitute continuous and systematic contacts sufficient to create general jurisdiction. *See GE Capital,* 2006 U.S. Dist. LEXIS 16170 at *11 (holding that ownership interest in Texas real property was insufficient to create general jurisdiction); *Construction Aggregates*, 860 F. Supp. at 1179-80 (defendant's partnership status in company that owned motel property in Texas that was unrelated to the lawsuit was insufficient to make him "generally present within the jurisdiction").  Just as it "strains reason to infer that anyone buying a limited partnership interest as a passive investment in a Texas limited partnership impliedly consents to or expects to be haled into court on *any and all* suits brought in Texas," *Construction Aggregates*, 860 F. Supp. at 1180, it strains to reason to infer that any passive investor in a Texas oil well consents or expects to be haled into a Texas court on a suit relating to natural gas condensate allegedly stolen from Mexico.

(internal quotations and citation omitted); *GE Capital*, 2006 U.S. Dist. LEXIS 16170 at \*14-15 (finding no specific jurisdiction over non-resident director, because "in order to demonstrate that [he] had minimum contacts with Texas, [plaintiff] cannot simply rely on the fact that [he] was a director of a corporation with its principal place of business in Texas, but instead must tie [the director's] allegedly tortious conduct to the forum," and the complaint contained no such allegations).  Nor would it be a logical inference that St. James—an out-of-state E&P company that is run out of Utah and has wells exclusively in Colorado—participated in the so-called Texas black market for stolen Mexican condensate.

Nor has PEP come forth with any evidence whatsoever to indicate actual participation by St. James.  Plaintiff tried to do so by arguing in its opposition that St. James has made creditor claims in a bankruptcy pending in the Western District of Texas, presumably indicating that it does business in Texas and/or is a "d/b/a" of Big Star.  *See* Opp. at 20.  However, as the Creditor Claim Form submitted by PEP clearly indicates—and as St. James pointed out in its reply brief filed in support of its original motion to dismiss (*see* Dkt. No. 22 in Case No. 4:11-CV-2019 at 3-4)—it was third party Saint James *Energy* that made the creditor claim in the AGE Refining bankruptcy, which is distinct from Movant Saint James *Oil, Inc.*   *See* Ex. B to PEP Opp. (creditor claim form).  Movant, on the other hand, has conducted *no* business in Texas that has anything to do with this lawsuit, warranting dismissal pursuant to Rule 12(b)(2).

**B.    Big Star's Contacts with Texas Cannot Be Imputed to St. James for Jurisdictional Purposes Under an "Alter Ego" Theory.**

Because St. James clearly has no *direct* contacts with this state sufficient to satisfy jurisdictional requirements, PEP apparently mainly relies on the barebones allegation that "no corporate distinction should be recognized among [Big Star and St. James]; they are and were alter egos, in part because Big Star was utilized for an illegal purpose and as a sham to

perpetuate a fraud." Compl. ¶ 63. While St. James recognizes the general principle that a court

that has jurisdiction over a corporation has jurisdiction over its alter egos, *see Jackson v.*

*Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010), PEP cannot rely on this notion

here, where not only has it failed to allege even one fact in support of its baseless allegation that

St. James is Big Star's alter ego, it simply ***cannot*** make a prima facie showing of alter ego for

these two companies. Accordingly, St. James should be dismissed from this suit for lack of

personal jurisdiction.[5]

1.    **"Alter Ego" Jurisdiction Can Lie Only Where the Non-Texas Parent
      Exerts So Much Control Over the Texas Subsidiary that They Are
      But One and the Same Company.**

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state

merely because its subsidiary is present or doing business there." *Hargrave v. Fibreboard Corp.,*

710 F.2d 1154, 1159 (5th Cir. 1983).[6]   Only where the parent corporation "exerts such

domination and control over its subsidiary that they do not in reality constitute separate and

distinct corporate entities but are one and the same corporation for purposes of jurisdiction" can

the Texas entity's contacts be imputed to the out-of-state entity. *Id.* (applying Texas long-arm

---

[5] St. James has located no authority to indicate that "alter ego" theories of jurisdiction apply in the partnership context. Nonetheless, out of an abundance of caution, St. James undertakes in this Motion to demonstrate that even if an "alter ego" or "single enterprise" argument ***could*** serve to impute Big Star's Texas contacts to its partners for jurisdictional purposes, PEP has not made, and cannot make, a prima facie showing of alter ego as to these two separate entities.

[6] For purposes of determining whether one corporate entity's contacts with a state can be imputed to another entity in order to confer personal jurisdiction, it is unclear whether one looks to the law of the state of incorporation versus the forum state. *See, e.g., Jackson*, 615 F.3d at 587 (noting that it was an "open issue" whether choice of law for alter ego analysis for personal jurisdiction purposes is different than for liability but deciding without resolving the issue); *but see Kisiel*, 2001 U.S. Dist. LEXIS 8823 at *10 (holding that, similar to determinations of liability, law of state of incorporation governs whether corporate distinctions should be disregarded in determining personal jurisdiction) (citing *House v. 22 Texas Services, Inc.*, 60 F. Supp. 2d 602, 609 (S.D. Tex. 1999) (holding law of the state of incorporation applies to whether the corporate entity should be disregarded)); *but see Hargrave*, 710 F.2d at 1159 (applying Texas law to question of jurisdiction but Pennsylvania law to question of liability). Regardless, because Big Star is a registered Texas partnership, the Court may apply Texas law to determine whether Big Star's actions can be imputed to St. James to create general jurisdiction over this out-of-state corporation.

statute) (citing *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S. Ct. 250, 251, 69 L. Ed. 634 (1925)).   In determining whether a subsidiary corporation is subject to the jurisdiction of a forum state because its parent corporation is present or doing business there (or vice-versa), courts should determine whether the entities are "separate and distinct . . . for personal jurisdiction purposes, taking into account the amount of the subsidiary's stock owned by the parent corporation, the existence of separate headquarters, the observance of corporate formalities, and the degree of the parent's control over the general policy and administration of the subsidiary."   *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007) (citation and internal quotations omitted).   Even 100% stock ownership and commonality of all officers and directors are not alone sufficient to establish an alter ego relationship between two corporations sufficient to confer jurisdiction on a foreign entity.   *Hargrave*, 710 F.2d at 1159; *see also EsNtion Records, Inc. v. JonesTM, Inc.*, No. 3:07-CV-2027-L, 2008 U.S. Dist. LEXIS 46926, at *14 (N.D. Tex. June 16, 2008) ("The existence of shared corporate officers merely reveals Defendants' normal parent-subsidiary relationship and does not imply the kind intimate connection necessary for this court to find a relationship so close that the court may attribute [one entity's] Texas contacts to [the out-of-state entity]"); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002).

Rather, in order "to fuse the two [entities] for jurisdictional purposes," there must be proof of "control by the parent over the internal business operations and affairs of the subsidiary"—control that must be actually exercised by the parent and that is "greater than that normally associated with common ownership and directorship."   *Hargrave*, 710 F.2d at 1159 (citation omitted); *BMC*, 83 S.W.3d at 799 (Tex. 2002)  ("To 'fuse' the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal

business operations and affairs of the subsidiary.").[7]    By way of example, "appropriate parental involvement includes monitoring the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies"; "something beyond the subsidiary's mere presence within the bosom of the corporate family" is thus necessary to establish alter ego jurisdiction.  *PHC-Minden*, 235 S.W.3d at 176 (citing *Dickson Marine, Inc. v. Panalpina, Inc*., 179 F.3d 331, 338 (5th Cir. 1999)).[8]    Finally, and importantly, the plaintiff bears the burden of making a prima facie showing that a nonresident entity is subject to personal jurisdiction as the "alter ego" of a Texas entity in order to overcome the presumption of separateness.  *Freudensprung v. Offshore Tech. Servs*., 379 F.3d 327, 346 (5th Cir. 2004) (holding that something beyond mere existence of corporate relationship between a resident and nonresident must be shown to overcome "the presumption of institutional independence of

---

[7] Jurisdictional veil-piercing and substantive veil-piercing involve different elements of proof.  *See, e.g., Kisiel*, 2001 U.S. Dist. LEXIS 8823 at *9 ("While it may be proper to pierce a corporate veil or find alter ego *liability* if one corporation uses a related corporation as a shell to perpetrate a fraud, it is far from clear that every time two separate corporations perpetrate a fraud together, the *minimum contacts* of one should be imputed to the other."); *PHC-Minden*., 235 S.W.3d at 174 (holding that two inquiries are different); *Gonzalez v. Lehtinen*, No. 13-06-441-CV, 2008 Tex. App. LEXIS 1889, at *13-14 (Tex. App.—Corpus Christi Mar. 13, 2008, pet. denied) ("It is important to note . . . that the instant case presents the issue of jurisdictional veil-piercing, which involves different elements of proof than veil-piercing for the purpose of liability. . . . We do not assess certain issues, such as fraud and undercapitalization, which go to the issue of substantive veil-piercing.).

[8] Some Texas appellate courts have also recognized the "common enterprise theory," i.e., that when two companies comprise a single business entity, any corporate distinction between them should be ignored.  *See, e.g., Carlson Mfg. v. Smith*, 179 S.W.3d 688, 693 (Tex. App.—Beaumont 2005, no pet.); *but see PHC-Minden*, 235 S.W.3d at 173 (noting that "single enterprise" is a "theory we have never endorsed. . .").  While PEP has not pled this theory of jurisdiction or liability, out of an abundance of caution, St. James demonstrates in this Motion that the theory is inapplicable here.  Factors to be considered in determining whether separate corporations should be treated as a "single enterprise" include:

(1) common employees; (2) common offices; (3) centralized accounting; (4) payment of wages by one corporation to another corporation's employees; (5) common business name; (6) services rendered by the employees of one corporation on behalf of another corporation; (7) undocumented transfers of funds between corporations; and (8) unclear allocation of profits and losses between corporations.

*Carlson*, 179 S.W.3d at 694 (citing *Paramount Petroleum Corp. v. Taylor Rental Ctr*., 712 S.W.2d 534, 536 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.)).  Because "the purpose of the single business enterprise theory, like the alter ego theory and other doctrines designed to pierce the corporate veil, is to prevent an inequitable result," there must be evidence that the benefits of the entity conducting business in the State of Texas inured to defendant alleged to constitute the alter ego.  *Id.*

related corporate entities" for jurisdictional purposes) (citations omitted); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000) (holding plaintiff "must make a prima facie showing that [the foreign entity] so controls other organizations that the activities of those organizations may be fairly attributed to [it] for purposes of asserting jurisdiction over it."); *Hargrave*, 710 F.2d at 1161 (describing burden on party seeking to establish "alter ego jurisdiction").

> ## 2. PEP Has Not, and Cannot, Overcome the Jurisdictional Presumption of Separateness Between St. James and Big Star.

In the case at bar, PEP plainly has not carried (and cannot carry) its burden of making a prima facie case that St. James and Big Star are alter egos for jurisdictional purposes.  Rather, the two companies maintain a degree of corporate separation that is "more than superficial." *Hargrave* 710 F.2d at 1161.  They are two separate companies joined by the common bond of stock ownership, and any policymaking authority held and exercised by St. James is "no more than that appropriate for a sole shareholder of a corporation, and certainly not enough to warrant the extraterritorial exercise of jurisdiction" of a Texas court. *Id.*

For instance, St. James's corporate headquarters are in Sandy, Utah—where its President, Jensen, is located and where all corporate functions—e.g., accounting and payroll—are performed.  Jensen Decl. ¶ 4, 5.  While general policy-making for St. James is performed by Mr. Jensen, all day-to-day decisions for that company are made by Kent Moore, the company's Productions Superintendent and only additional employee, who is located in Greeley, Colorado. *Id.* ¶ 5.  Mr. Moore is located there because St. James is an oil and gas E&P company engaged mainly in the business of drilling wells, and all of the company's active operations are located in

one particular field in that state.[9]  *Id.* ¶¶ 2,5 .  All accounting for the company is handled by a

contract accountant located in Sandy, Utah.  *Id.* ¶ 5.  Messrs. Jensen and Moore are compensated

by St. James and/or its operating company, St. James Energy Operating Inc.  *Id.* ¶ 6.

Big Star, on the other hand, is headquartered in George West, Texas, where its only plant

is located.  *Id.* ¶ 10.  Big Star is engaged in the business of purchasing crude oil at the wellhead

for resale into interstate pipelines and/or directly to major refineries—which purchases and sales

are the product of almost daily decisions in terms of from whom Big Star will buy and to whom

Big Star will sell on any given day depending on the offered price.  *Id.* ¶ 10.  While Mr. Jensen

acts as the Manager of Big Star and in that capacity participates in high-level, general policy-

making decisions, the day-to-day operational decisions of Big Star are made by Charles Cravens,

the Plant Manager located in George West, Texas—i.e., Mr. Cravens generally decides from

whom and at what location Big Star will buy, and what price it will pay, on any particular day,

and he generally consults Mr. Jensen regarding only those potential purchases that involve

relatively large volumes, and even then, only if he can reach Mr. Jensen in time.  *Id.* ¶ 11.  Big

Star's accounting and crude oil payments are handled by two bookkeepers located at its George

West headquarters, and payroll is handled by an accountant located in Denver, Colorado who

functions as the company's CFO, Beverly Licholat.  *Id.*  None of Big Star's employees are

employed by, or perform services for, St. James.  *Id.* ¶ 12.  All of Big Star's employees are paid

out of Big Star.  *Id.*  Mr. Jensen draws a salary from Big Star for his work for that company,

which is separate from the management fee he receives for his work for St. James.  *Id.*

In sum, the two companies are completely different and separate both geographically and

functionally.  The only thing they have in common is one officer (Mr. Jensen) and St. James's

---

[9] While all of St. James's operations are located in Colorado, the company does own a handful of passive interests in oil and gas leases in other states.  *See* Jensen Decl. ¶ 6.

14

ownership in Big Star.   The two companies (i) file separate tax returns, (ii) have separate bank accounts, (iii) maintain separate accounting and payroll systems, (iv) maintain separate budgets and financial records, (v) have separate health insurance contracts for their employees, (vi) share commercial general liability insurance but each pay a portion of the total premium, (vii) have separate offices (in different states), (viii) engage in completely different types of operations, (ix) have separate managers making their respective daily operating decisions,  (x) have separate assets, (xi) share only one officer, (xii) pay only their own respective employees' compensation, and  (xiii) do not share a business name.  *Id.* ¶¶ 2-7, 10-13.

Accordingly, PEP—who has alleged literally nothing more than the conclusory allegation that St. James and Big Star were each other's alter egos—has failed to, and will not be able to, make a prima facie case for conferring personal jurisdiction on St. James.  Given the clear separation between the two companies, Big Star's contacts with Texas simply do not flow through to St. James, a Nevada corporation headquartered in Utah and doing business in Colorado. *See Hargrave*, 710 F.2d at 1160-61 (where (i) parent owned 100% of stock in subsidiary and had one common director but companies maintained separate corporate headquarters, bank accounts, accounting and payroll systems, insurance contracts, budgets, financial records, tax returns, and assets, and (ii) parent had complete authority over subsidiary's general policy decisions but subsidiary's officers made "[d]ay-to-day business and operational decisions," finding plaintiff did not demonstrate the necessary nature and degree of control necessary to fuse the two corporations for purposes of the Texas long-arm statute.).[10]

---

[10] *See also Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 857 (5th Cir. 2000) (affirming dismissal of non-resident companies where plaintiffs presented no evidence that they financed the operations of the Texas company, paid the Texas company's employees' salaries, shared property, or failed to observe corporate formalities); *EsNtion Records*, 2008 U.S. Dist. LEXIS 46926 at *14-18 (dismissing foreign parent entity for lack of personal jurisdiction where, even though parent and wholly owned subsidiary had five overlapping corporate officers, they also kept separate bank accounts, business departments, offices, and books and finances; there was no

Finally, in trying to overcome St. James's jurisdictional challenge, PEP cannot rely on its sloppy definition in its Complaint of the term "Big Star" to sometimes include not only Big Star, but also St. James and James Jensen.  Just because Plaintiff has cut corners in pleading its claims does not mean that the **Court** may or should do so in ascertaining whether it possesses personal jurisdiction over St. James in particular.  Given that they are indisputably two separate defendants—regardless of PEP's inconsistent definitions of "Big Star" to sometimes include only Big Star Gathering Ltd, LLP and at other times all three of the Big Star Defendants, *see* Compl. ¶¶ 8, 15—the  Court must make a separate determination as to whether St. James has sufficient contacts with Texas to establish personal jurisdiction in this case.

### C.    PEP's Allegation that Big Star is an "Expired" Texas Partnership Does Not Create Personal Jurisdiction Over St. James.

In an effort to pin liability on St. James for the acts of Big Star, Plaintiff also alleges that "Big Star's status as a Texas corporation has been lost, and therefore St. James is liable for its action."  Compl. ¶ 63.  This argument was abandoned by PEP in opposing St. James's original motion to dismiss.  *See* PEP Opp. at 19-20.  However, to the extent that PEP also relies on this

---

evidence of the parent actively controlling the day-to-day operations of its subsidiary (e.g., setting sale price of its products); and the two companies employed different people and maintained separate payrolls); *PHC-Minden*, 235 S.W.3d at 175 (reversing trial court's finding of jurisdiction over subsidiary because evidence pointing to parental involvement was consistent with parent's investor status, not atypical control: two entities maintained separate headquarters in separate states; subsidiary's board approved its budget and oversaw day-to-day operations; subsidiary established its own policies and procedures for providing health care to patients; parent was not involved in subsidiary's hiring; two entities shared no directors; while subsidiary's executive officers received paychecks from parent, salaries were intercompany payables coming out of subsidiary's revenues; while parent provided subsidiary's general liability and health insurance, policies were funded from subsidiary's revenues); *BMC*, 83 S.W.3d at 799-800 (reversing trial court's finding of jurisdiction over parent where there was no evidence that it treated subsidiary's revenue as its own; two companies' headquarters being located in Belgium failed to show that parent treated subsidiary as mere department or office; fact that parent's employees were from time to time in subsidiary's offices did not permit reasonable inference of such control that the two entities ceased to be separate; and there was no evidence of services being performed by officer of one company for the other for free); *Carlson Mfg. v. Smith*, 179 S.W.3d 688, 694 (Tex. App.—Beaumont 2005, no pet.) (where Texas entity maintained its offices in foreign entity's building, owed rent that it did not pay, and use foreign entity's equipment to manufacture products, finding court lacked personal jurisdiction over foreign entity because there was no evidence of common employees, centralized accounting, payment of wages, use of a common business name, using the services of the other corporation's employees, undocumented transfers of funds, or allocation of profit and loss; there was "no evidence that any of the benefits of [the Texas entity] conducting business in the State of Texas - or anywhere - inured to [the foreign entity].").

allegation to attempt to create personal jurisdiction over St. James as an interest-owner in Big Star, this effort is misguided, for two reasons.

First, Big Star is a registered Texas limited liability partnership in good standing with the State of Texas. *See* Ex. A; Jensen Decl. ¶ 8.[11]    Second, even if it were not, a court cannot exercise jurisdiction over non-Texas residents or entities simply because they are owners of defunct or expired companies: while this may be relevant to a shareholder's ***liability*** for the corporation's debts, it does not affect the jurisdictional determination of whether the defunct corporation's contacts can be imputed to the out-of-state owner. *See Milltronics Inc. v. Hawk Am.*, No. 3:92-CV-761-X, 1993 U.S. Dist. LEXIS 20205, at *13-15 (N.D. Tex. Nov. 23, 1993) (dismissing parent for lack of personal jurisdiction and holding that revocation of corporate charter does not create "alter ego" status among defunct corporation and its owners; while liability might arise by operation of law, stock ownership in defunct corporation "is not a contact subjecting a shareholder to personal jurisdiction."). Accordingly, the claims against St. James should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2).

### D.    PEP Is Not Entitled to Additional Jurisdictional Discovery Before St. James's Jurisdictional Challenge is Ripe for Adjudication.

In order for a court to allow jurisdictional discovery, a plaintiff must make "a preliminary showing of jurisdiction" pertaining to the nonresident alleged "alter ego." *Fielding v. Hubert Burda Media, Inc*., 415 F.3d 419, 429 (5th Cir. 2005) (citation omitted). PEP has already had an opportunity in the four months since the filing of St. James's original motion to dismiss to both seek jurisdictional discovery—which it ***has*** sought and obtained from each of Big Star, James

---

[11] The company has been a registered LLP in good standing with the Texas Secretary of State since 2002, with the sole exception being an inadvertent lapse in the fall of 2010; Big Star's registration was reinstated within weeks. *See* Jensen Decl. ¶ 9; Ex. B. Because of the lapse, Big Star was forced to register anew rather than submit the usual renewal form—resulting in two separate listings with the Secretary of State for the same company. *See* Jensen Decl. ¶ 9; Exs. A & B.

17

Jensen, St. James, and St. James Energy—and present evidence to controvert the statements in Mr. Jensen's affidavit. However, as explained above, PEP's only attempt to do so (erroneously citing St. James *Energy's* notice of claim in the AGE Refining bankruptcy) failed.

Moreover, PEP's only *arguments* in the two pages it dedicated in its opposition brief to address jurisdiction over Saint James are as follows: (1) PEP defined "Big Star" to include St. James in its complaint (*see* Opp. at 19); (2) "Saint James concedes that PEP's alter ego and conspiracy allegations support a finding of jurisdiction" (*id.* at 20)—which is patently false (*see* St. James Mtn. to Dismiss at 8-14); and (3) a company with the words "Saint James" in its name filed a creditor claim in a Texas bankruptcy as a "d/b/a" of Big Star (Opp. at 20). Importantly, no amount of discovery would help Plaintiff in making *any* of these arguments to establish jurisdiction over St. James. Indeed, PEP has indicated its intention to add the "*correct*" St. James entity (i.e., the one that *does* have some relationship to the transactions in question in this lawsuit) by the new January 2012 deadline to add new parties—apparently recognizing the fact that in suing Movant, PEP made a mistake.

Accordingly, to the extent that PEP requests that a ruling on the instant motion be deferred for Plaintiff to conduct some unspecified discovery, such request should be denied. PEP has not only failed to make a preliminary showing of jurisdiction (by failing to present *any* evidence showing any relevant contacts with this forum), it has also failed to articulate what discovery it seeks and/or identify *any* evidence it believes such discovery might produce that would actually *support* personal jurisdiction over St. James. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 856 (5th Cir. 2000) (holding that "[w]hen the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted," and affirming denial of discovery where plaintiffs failed to explain what discovery they sought, what

facts they hoped to obtain from same, or how it would produce information that would support specific jurisdiction over nonresident corporation, and no amount of information on the corporation's general contacts with Texas would strengthen the assertion of specific jurisdiction because plaintiff's claims did not arise from such general contacts).[12]

## IV.   CONCLUSION

For the foregoing reasons, St. James requests that it be dismissed with prejudice from this action for lack of personal jurisdiction pursuant to Rule 12(b)(2).

DATED: December 6, 2011         Respectfully submitted,

GIBBS & BRUNS, LLP


___*/s/ Grant Harvey*_____
Grant J. Harvey

1100 Louisiana Street, Suite 5300
Houston, TX  77002-5215
Telephone: (713) 650-8805
Facsimile:  (713) 750-0903
gharvey@gibbsbruns.com

**ATTORNEY-IN-CHARGE FOR
DEFENDANT SAINT JAMES OIL, INC.**

---

[12] *See also EsNtion Records, Inc. v. JonesTM, Inc*., No. 3:07-CV-2027-L, 2008 U.S. Dist. LEXIS 46926, at *18-*19 (N.D. Tex. June 16, 2008) (denying discovery where plaintiff failed to present controverting evidence to make prima facia showing of jurisdiction over non-Texas parent corporation and failed to identify what evidence it expected to discover); *Johnson v. Verizon Communs., Inc*., No. 3: 10-CV-01764-B, 2011 U.S. Dist. LEXIS 38387, at *13-*14 (N.D. Tex. Apr. 7, 2011) (denying jurisdictional discovery where plaintiff failed to make "preliminary showing of jurisdiction" over nonresident parent company); *United Galvanizing Inc. v. Imperial Zinc Corp*., No. H-08-05512008, U.S. Dist. LEXIS 87038, at *32-*34 (S.D. Tex. Oct. 27, 2008) (same) ("a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case, but must make a prima facie showing with some competent evidence demonstrating that personal jurisdiction might exist over a defendant in order to be entitled to jurisdictional discovery.") (citation and internal quotation marks omitted); *cf. Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) ("This Court affirms denials of discovery on questions of personal jurisdiction in cases where discovery sought could not have added any significant facts.").

**OF COUNSEL:**

Ayesha Najam
GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, TX  77002-5215
Phone: (713) 650-8805
Fax:  (713) 750-0903
anajam@gibbsbruns.com

John H. Kim
THE KIM LAW FIRM
Federal I.D. No. 15626
State Bar No. 00784393
4309 Yoakum, Ste. 2000
Houston, Texas 77006
Phone: (713) 522-1177
Fax: (888) 809-6793

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been provided to all counsel of record through the Court's electronic service/ECF system.

_____*/s/ Grant Harvey*_____ _____
Grant J. Harvey