IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEMEX EXPLORACIÓN Y PRODUCCIÓN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BASF CORPORATION; BASF FINA | § | |
| PETROCHEMICALS LIMITED | § | |
| PARTNERSHIP; MURPHY ENERGY | § | |
| CORPORATION; BIO-NU SOUTHWEST, | § | CIVIL ACTION NO. H-10-1997 |
| INC. d/b/a VALLEY FUELS; US | § | |
| PETROLEUM DEPOT, INC.; ARNOLDO | § | |
| MALDONADO; JONATHAN DAPPEN; | § | |
| STEPHEN PECHENIK; TIMOTHY L. | § | |
| BRINK; CONTINENTAL FUELS, INC.; | § | |
| and HIGH SIERRA CRUDE OIL & | § | |
| MARKETING, LLC, Successor to | § | |
| PETRO SOURCE PARTNERS, LP, | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| PEMEX EXPLORACIÓN Y PRODUCCIÓN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BIG STAR GATHERING LTD L.L.P.; | § | |
| F&M TRANSPORTATION, INC.; | § | |
| JAMES JENSEN; JOPLIN ENERGY, | § | |
| LLC f/k/a HUTCHISON HAYES | § | CIVIL ACTION NO. H-11-2019 |
| ENERGY, LLC; JEFF KIRBY; | § | |
| PLAINS ALL-AMERICAN PIPELINE, | § | |
| L.P.; SAINT JAMES OIL, INC.; | § | |
| SUPERIOR CRUDE GATHERING, INC.; | § | |
| TRANSMONTAIGNE PARTNERS, L.P.; | § | |
| and WESTERN REFINING COMPANY, | § | |
| L.P., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, PEMEX Exploración y Producción ("PEP"), has brought

suit against multiple defendants in two separate — but now

consolidated — actions for claims arising from sales in the United States of natural gas condensate allegedly stolen from PEP in Mexico.  Pending before the court are five motions:

> (1) Defendant/Third-Party Plaintiff Murphy Energy Corporation's Motion for Attorneys' Fees ("Murphy Energy's Motion for Attorneys' Fees") (Docket Entry No. 610);
>
> (2) Defendant Plains Marketing, L.P.'s Motion for Certification and Entry of Final Judgment Pursuant to Rule 54(b) ("Plains' Motion for Judgment") (Docket Entry No. 613);
>
> (3) Defendant Murphy Energy Corporation's Motion for Leave to Designate Responsible Third Parties ("Murphy Energy's Motion to Designate Responsible Third Parties") (Docket Entry No. 618);
>
> (4) Pemex Exploración y Producción's Motion for Partial Reconsideration and Opposition to Plains Marketing, L.P.'s Motion for Certification and Entry of Final Judgment ("PEP's Motion for Partial Reconsideration") (Docket Entry No. 620); and
>
> (5) Pemex Exploración y Producción's Motion for Certification of an Interlocutory Appeal and for a Stay of Proceedings ("PEP's Motion for Certification and Stay") (Docket Entry No. 621).

For the reasons explained below, Murphy Energy's Motion for Attorneys' Fees (Docket Entry No. 610) will be denied, Murphy's Motion to Designate Responsible Third Parties (Docket Entry No. 618) will be denied, Plains' Motion for Judgment (Docket Entry No. 613) will be granted, and Pemex's Motion for Partial Reconsideration (Docket Entry No. 620) and Motion for Certification and Stay (Docket Entry No. 621) will be denied.

## I. **Background**

There are two live complaints in this consolidated action: PEP's Third Amended Complaint (Docket Entry No. 220) filed in Civil Action No. H-10-1997 (the "BASF Action"); and PEP's First Amended Complaint (Docket Entry No. 378) filed in Civil Action No. H-11-2019 (the "Big Star Action").  Each of the two live complaints asserts claims against different defendants for conversion arising from the use of stolen property alleged to be natural gas condensate, for equitable relief (unjust enrichment, money had and received, and constructive trust), violation of the Texas Theft Liability Act, and civil conspiracy.  The Third Amended Complaint filed in the BASF Action also asserts claims for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c)-(d), against a group of defendants referred to as the "Conspiring Defendants."  On September 30, 2013, the court signed a Memorandum Opinion and Order ("MO&O," Docket Entry No. 607) that summarized the factual allegations and pleading history of the consolidated cases[1] and, inter alia, granted Defendant Plains Marketing, L.P.'s Motion for Summary Judgment (Docket Entry No. 475),[2] granted in part and denied in part Defendant Murphy Energy Corporation's ("Murphy Energy") Motion for Final Summary Judgment (Docket Entry No. 479),[3] denied PEP's

---

[1]MO&O, Docket Entry No. 607, pp. 4-9.

[2]Id. at 34-83, and 179.

[3]Id. at 117-143, and 179.

Dispositive Motion for partial summary judgment on claims asserted against Plains and Murphy Energy,[4] and granted PEP's Dispositive Motion for judgment on Murphy Energy's counterclaims.[5]

## II.  PEP's Motion for Partial Reconsideration

PEP moves the court for partial reconsideration of the September 30, 2013, MO&O in which the court, _inter alia_, granted Plains' motion for summary judgment on all of PEP's conversion claims, including those that arise from transactions that occurred within the two-year limitations period.    PEP states that its "motion to reconsider is limited to a single issue—Whether this Court properly granted summary judgment to Plains on PEP's conversion claims based on transactions after May 29, 2009, the date the Court held was the applicable limitations deadline."[6] Citing John Deere Co. v. American National Bank, Stafford, 809 F.2d 1190 (5th Cir. 1987), PEP argues that the court erred because Plains did not move for summary judgment on the grounds for which judgment was granted,[7] and because PEP presented evidence that Plains purchased stolen condensate within the limitations period.[8]

---

[4]Id. at 156-57, 167-68, and 180.

[5]Id. at 158-68, and 180.

[6]PEP's Motion for Partial Reconsideration, Docket Entry No. 620, p. 2 (citing MO&O, Docket Entry No. 607, p. 73).

[7]Id. at 3-5.

[8]Id. at 5-8.

In <u>John Deere</u> a defendant moved for summary judgment solely on the basis of <u>res judicata</u>. <u>Id.</u> at 1191. The district court granted the motion for summary judgment for a different reason, i.e., that the plaintiff had presented no evidence of damages. <u>Id.</u> Concluding that the damages issue "certainly was not raised by the [defendant] in a manner that would be sufficient to put [the plaintiff] on notice that failure to present evidence of damages could be grounds for summary judgment," <u>id.</u>, the Fifth Circuit reversed the grant of summary judgment, stating that "a district court may not grant summary judgment sua sponte on grounds not requested by the moving party." <u>Id.</u> at 1192. <u>John Deere</u> stands for the principle that summary judgment is not appropriate where the district court relied on grounds not advanced by the moving party, and the nonmoving party had no notice or opportunity to respond. <u>See</u> <u>United States v. Houston Pipeline Co.</u>, 37 F.3d 224, 228 (5th Cir. 1994) (finding summary judgment appropriate where a plaintiff's claim was premised on the applicability of a case, the plaintiff knew that it needed to introduce evidence to bring the claim within the holding of the case, yet plaintiff introduced no such evidence).

## A.    Standard of Review

PEP has styled its motion as a motion for partial reconsideration. "[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." <u>St. Paul Mercury</u>

Insurance Company v. Fair Grounds Corporation, 123 F.3d 336, 339
(5th Cir. 1997).   The court's September 30, 2013, MO&O (Docket
Entry No. 607) was interlocutory, not final, because it did not
resolve the entire case.   See Moody v. Seaside Lanes, 825 F.2d 81,
85 & n.3 (5th Cir. 1987) (explaining that only the resolution of an
entire adversary proceeding is final).   Courts reconsider
interlocutory orders under Rule 54(b), which in pertinent part
provides that

> any order or other decision, however designated, that
> adjudicates fewer than all the claims or the rights and
> liabilities of fewer than all the parties does not end
> the action as to any of the claims or parties and may be
> revised at any time before the entry of a judgment
> adjudicating all the claims and all the parties' rights
> and liabilities.

Fed. R. Civ. P. 54(b).   "Rule 54(b) authorizes a district court to
reconsider and reverse its prior rulings on any interlocutory order
'for any reason it deems sufficient.'"   United States v. Renda, 709
F.3d 472, 479 (5th Cir.), cert. denied, 134 S. Ct. 618 (2013)
(quoting Saqui v. Pride Central America, LLC, 595 F.3d 206, 210-11
(5th Cir. 2010)).   Denial of motions to reconsider are reviewed for
abuse of discretion.   Id. (citing Swope v. Columbian Chemicals Co.,
281 F.3d 185, 193 (5th Cir. 2002)).

## B.   Analysis

PEP argues that the court erred by granting Plains' motion for
summary judgment on conversion claims that arose from transactions
that occurred after May 29, 2009, because Plains' challenge to
PEP's tracing methodology was

date-neutral and was not directed at transactions within
a particular limitations date. . .

PEP responded accordingly by providing general
examples of its tracing methodology, without regard to
particular dates. *See* Dkt. 545 at 4. PEP's summary
judgment proof thus was intended to rebut Plains'
argument that PEP could not show that Plains purchased
the "identical condensate allegedly stolen from PEP," not
to trace every single transaction including those within
two years. *See id.*, Dkt. 475 at 5.

Ultimately, this Court rejected Plains' proposed
standard of proof on tracing, holding that PEP need only
trace its condensate to Plains "with reasonable
certainty." Dkt. 607 at 102. With respect, the Court
erred in then requiring PEP *post hoc* to present evidence
of all transactions under the appropriate standard. As
the Court's Order established, PEP defeated the sole
ground on which Plains based its requested relief.[9]

PEP also argues that the court erred because PEP's response to

Plains' motion for summary judgment cited evidence capable of

establishing that Plains engaged in transactions involving stolen

condensate after May 29, 2009, and that had PEP been on notice of

the need to present tracing evidence for Plains' transactions that

occurred after May 29, 2009, PEP would have provided such evidence.

As proof of its ability to provide evidence that Plains engaged in

transactions that involved stolen condensate after May 29, 2009,

PEP has attached to its motion for partial reconsideration three

transaction reports issued by the Texas Railroad Commission that

PEP argues constitute evidence that Plains purchased stolen

condensate in February of 2010.[10]

_____

[9] Id. at 4.

[10] Id. at Exhibit A, Docket Entry No. 620-1.

Plains opposes PEP's Motion for Partial Reconsideration. Plains argues that PEP had notice of the grounds for which summary judgment was sought and granted, that PEP also had an opportunity to respond, and that the evidence attached to PEP's Motion for Partial Reconsideration is not capable of raising a genuine issue of material fact for trial.[11]

      1.   <u>The Court Granted Summary Judgment on the Grounds for Which Plains Moved for Summary Judgment.</u>

PEP argues that the Fifth Circuit's decision in <u>John Deere</u>, 809 F.2d at 1190, supports its motion for partial reconsideration of the court's decision to grant Plains summary judgment on conversion claims arising from transactions that occurred after May 29, 2009, because Plains' challenge to PEP's tracing methodology was not directed to transactions within the limitations period,[12] and because Plains did not move for summary judgment on the ground that it had not purchased any condensate within the two-year period.[13] PEP's argument that Plains' challenge to PEP's tracing methodology was not directed to transactions within the limitations period has no merit because Plains argued that it was

---

[11]Defendant Plains Marketing, L.P.'s Response to Plaintiff Pemex Exploracion y Produccion's Motion for Partial Reconsideration, Docket Entry No. 628, p. 2.

[12]PEP's Motion for Partial Reconsideration, Docket Entry No. 620, p. 4.

[13]<u>Id.</u> at 5.

entitled to summary judgment "on all claims asserted against it by
Plaintiff [PEP]."[14]  Plains' motion expressly requested

> that the Court dismiss PEP's claims for conversion . . .
> because (i) PEP cannot meet its burden under Texas law to
> show that the hydrocarbons purchased by Plains Marketing
> are the identical hydrocarbons allegedly stolen from PEP
> . . . [and] (iii) any of Plains Marketing's alleged
> purchases of stolen Mexican condensate that occurred
> prior to April 20, 2010 are time-barred.[15]

    (a)  Conversion Claims that Are Time-Barred

    Plains argued that PEP's conversion claims arising from
transactions that occurred prior to April 20, 2010, were time-
barred because under Texas law conversion claims are subject to a
two-year limitations period, and PEP did not assert any claims
against Plains until April 20, 2012, when PEP filed the First
Amended Complaint in the Big Star Action (Docket Entry No. 378).
PEP argued — and the court concluded -- that the conversion claims
first asserted against Plains on April 20, 2012, related back to
the filing date of the Original Complaint, May 29, 2011.
Therefore, the court held that claims arising from transactions
that occurred more than two years earlier, i.e., before May 29,
2009, were time-barred.  In reaching this holding the court
rejected PEP's arguments that its conversion claims were subject to
tolling provided either by the discovery rule or by the doctrine of
fraudulent concealment.  PEP has not asked for reconsideration of

---

    [14]Defendant  Plains  Marketing,  L.P.'s  Motion  for  Summary
Judgment ("Plains' MSJ"), Docket Entry No. 475, p. 1.

    [15]Id. at 1-2.

the court's decisions that conversion claims asserted against Plains in the First Amended Complaint relate back to May 29, 2011, or that conversion claims arising from transactions that occurred more than two-years prior to that date are time-barred.

      (b)  Conversion Claims that Are Not Time-Barred

PEP's argument that Plains did not move for summary judgment on the ground that it had not purchased natural gas condensate within the two-year limitations period has no merit because Plains argued that it was entitled to summary judgment on **all** of PEP's conversion claims.  Plains argued:

> PEP alleges that Plains Marketing purchased stolen Mexican condensate from June 1, 2008 through November 1, 2010 from two suppliers: Kemco and STUSCO. PEP has no evidence that Plains Marketing actually purchased Mexican condensate from either entity, or that any Mexican condensate that Plains Marketing purchased (if any) was the identical condensate stolen from PEP. PEP and its witnesses have admitted that PEP cannot trace any specific condensate stolen from PEP to any specific purchase of hydrocarbons by Plains Marketing or any other defendant, and PEP has no other evidence to show that the hydrocarbons purchased by Plains Marketing are the same barrels of condensate stolen from PEP.[14]  As a result, PEP cannot satisfy its burden of proof, and its conversion . . . claims should be dismissed.
>
> [14]  See, e.g., Exhibit 2 (Valle) at 300-305; Exhibit 3 (Cardenas) at 437; Exhibit 4, PEP's Second Supplemental Responses to Plains All-American Pipeline's First Set of Interrogatories, Interrogatory 1(j) (as adopted in PEP's Second Supplemental Responses to Plains Marketing's First Set of Interrogatories). . . .[16]

---

[16]Id. at 5 & n.14.  Plains' statement that PEP alleges Plains purchased stolen Mexican condensate from June 1, 2008, through
(continued...)

Although the parties disputed the precise contours of the Texas law standard for proving the identity of converted property, Plains' argument placed PEP on notice of the need to provide evidence capable of proving the identity of converted property for conversion claims that were not time-barred, i.e., claims that arose from transactions that occurred after May 29, 2009. PEP's contention to the contrary has no merit and is, in fact, belied both (1) by PEP's assertion in response to Plains' motion for summary judgment that "it suffices for PEP to show that there is a fact question as to each defendant's receipt of condensate stolen from PEP. PEP is not required to provide summary judgment proof as to each of the hundreds of individual transactions in stolen

---

[16](...continued) November 1, 2010, from two suppliers -- Kemco and STUSCO -- is based in part on the First Amended Complaint filed in the Big Star Action (Docket Entry No. 378 at p. 16 ¶ 82) ("Although PEP's investigation continues, Plains purchased and subsequently resold millions of dollars of stolen condensate. For example, in 2008 Plains purchased at least $700,000 worth of condensate from Kemco at its George West facility, which Kemco had purchased from Arnoldo Maldonado and F&M. Plains sold this and other amounts to Valero. There were other transactions, and on information and belief, much more condensate was purchased and sold by Plains."); and in part on PEP's Second Supplemental and Amended Answers and Objections to Defendant Plains All-American Pipeline's First Set of Interrogatories to PEP ("PEP's Second Supplemental Answers and Objections"), Exhibit 43 to PEP's Dispositive Motion, Docket Entry No. 493-31, and Exhibit 51 to The Opposition of Plaintiff Pemex Exploración y Producción to the Dispositive Motions of Defendants ("PEP's Opposition to Defendants' Dispositive Motions"), Docket Entry No. 546-23, Interrogatory 1(d) (citing Exhibits 1 and 2 thereto consisting of tables summarizing Plains' alleged purchases from Kemco and STUSCO, respectively.).

condensate;"[17] and (2) by PEP's assertion in its motion for partial reconsideration that its response in opposition cited evidence capable of establishing that Plains purchased stolen condensate within the limitations period.[18]   After examining the entire record the court concluded that PEP only succeeded in raising a fact issue with respect to conversion claims arising from transactions that were time-barred because they occurred in 2008.[19]

---

[17]PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545, p. 4.  There PEP protested that the defendants were trying

> to force PEP to outline all of its evidence related to years of transactions (and address all the legal issues) in a 40-page opposition by seeking partial summary judgment on a transaction by transaction basis.  Rule 56 dies not allow for such a division.  "The vast majority of cases . . . hold that Rule 56 does not contemplate partial summary judgment as to portions of a single claim."  *Doty v. Sun Life Assur. Co. of Canada*, 2009 WL 3046955 (S.D. Tex. 2009); *see also* Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2737 (2012) ("Rule 56(d) does not authorize the entry of a judgment on part of a claim or the granting of partial relief, however.  It simply empowers the court to withdraw sham issues from the case and to specify those facts that really cannot be controverted.").

Id.  Notwithstanding this argument in response to defendants' motions for summary judgment, PEP filed its own dispositive motion seeking partial summary judgment on conversion claims based on transactions involving stolen natural gas condensate that passed through Continental Fuels.  See PEP's Dispositive Motion, Docket Entry No. 492, pp. 1-31, especially 27-31.

[18]See PEP's Motion for Partial Reconsideration, Docket Entry No. 620, pp. 3, 5-7 (citing PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545).

[19]MO&O, Docket Entry No. 607, pp. 52-54.

PEP's argument that its ability to raise fact issues as to time-barred claims is sufficient to withstand Plains' motion for summary judgment on claims that are not time-barred misapprehends the applicable summary judgment standard. Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The evidence that PEP cited, and that the court found capable of raising a fact issue as to conversion claims based on transactions that occurred in 2008, was not sufficient to defeat Plains' motion for summary judgment because that evidence would not be admissible at trial because claims based on those transactions are barred by limitations. Such evidence would not support a jury verdict for PEP. See id. PEP's failure to come forward with evidence capable of raising a genuine issue of material fact that would support a jury verdict on any of its conversion claims therefore required the court to grant Plains' motion for summary judgment on those claims. Fed. R. Civ. P. 56(c).

2. PEP Has Not Cited Evidence Capable of Raising a Genuine Issue of Material Fact for Trial on Conversion Claims that Are Not Time-Barred.

PEP argues that the court erred by granting Plains' motion for summary judgment because PEP's response in opposition cited

evidence capable of establishing that Plains purchased stolen condensate within the limitations period.[20]   Alternatively, PEP argues that attached to its motion for partial reconsideration is additional evidence showing that Plains purchased stolen condensate within the limitations period.[21]

> (a)   Standard for Proving Identity of Converted Property

Plains argued that in a conversion case based on Texas law

> [t]he plaintiff must specifically identify what property
> was stolen and prove that the specific defendant
> converted the very same property . . . In addition, a
> conversion plaintiff has the burden of showing the
> quantity of product allegedly taken with "reasonable
> certainty."[22]

PEP does not dispute that as the plaintiff in a conversion case it bears the burden of establishing the identity of the property converted.[23]   See Hughs Blanton, Inc. v. Shannon, 581 S.W.2d 538, 539 (Tex. App. — Dallas 1979, no writ).   See also In re Moody, 899

---

[20]PEP's Motion for Partial Reconsideration, Docket Entry No. 620, p. 2 ("PEP nonetheless presented some evidence, sufficient to raise a fact question, of transactions taking place after May 29, 2009."), and p. 3 ("PEP's opposition clearly describes Plains' transactions within the two-year period (Dkt. 545-21)." See also id. at 5-7.

[21]Id. at 7-8 (citing Exhibit A, Docket Entry No. 620-1).

[22]Plains's MSJ, Docket Entry No. 475, pp. 6-7 (citations omitted).

[23]See PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545, p. 5 (acknowledging that "PEP has to prove that it 'had, at the time of the alleged conversion, acquired some right or title to the identical goods or chattels claimed to have been converted.' O'Connor [v. Fred M. Manning, Inc., 255 S.W.2d 277,] 278 [(Tex. Civ. App. — Eastland 1953), writ refused]").

F.2d 383, 385 (5th Cir. 1990) (recognizing that plaintiffs in conversion cases based on Texas law must prove: (1) the defendant wrongfully exercised dominion or control over property to the exclusion of, or inconsistent with PEP's rights; (2) the identity of the property converted; and (3) damages). PEP argued that Plains' and the other defendants' "main defensive theme is based on a manufactured legal rule that PEP has to trace, the words of their experts, 'the identical molecules' of its condensate from the theft in Mexico into defendants' tanks and pipelines,"[24] and that the court rejected the legal standard for proving identity of converted property cited by Plains' motion for summary judgment.[25] But the court actually rejected both PEP's characterization of Plains' argument on this issue and PEP's attempt to avoid the identification requirement by arguing that it did not apply to fungible goods. The court also rejected PEP's contention that under the confusion of goods doctrine if PEP could show that it owned a fixed percentage of a combined mass, PEP would be entitled to a presumption that any defendant who bought a portion of that combined mass took possession of a proportionate percentage of

---

[24]Id. at 4-5.

[25]PEP's Motion for Partial Reconsideration, Docket Entry No. 620, p. 4 ("[T[his Court rejected Plains' proposed standard of proof on tracing, holding that PEP need only trace its condensate to Plains 'with reasonable certainty.' Dkt. 607 at 102. With respect, the Court erred in then requiring PEP *post hoc* to present evidence of all transactions under the appropriate standard. As the Court's Order established, PEP defeated the sole ground on which Plains based its requested relief.").

PEP's property.[26]  Observing that Texas courts have not excepted
fungible goods from the identification requirement, and that PEP
had not cited — and the court had not found — any Texas case that
had applied a proportionate percentage of ownership presumption to

_____

[26]See PEP's Opposition to Defendants' Dispositive Motions,
Docket Entry No. 545, pp. 4-22, especially 5-6 (where PEP argued:

> . . . With readily identifiable goods, there is no
> distinction between the identical property and the
> property owned.  With fungible goods, however, ownership
> does not necessarily follow molecules of oil or water, or
> grains of sand or wheat, but flows through transactions
> and transfers of title according to the property rules
> codified in the UCC.

> Resolution of this argument is critical to
> determination of this case.  The defendants' purported
> legal rule permeates all of their proof arguments.
> According to the defendants, PEP's conversion claim fails
> because PEP cannot establish that the defendants bought
> the "identical" property that the Cartel stole in Mexico.
> The challenges to PEP's experts and the foundation of the
> defense experts' opinions arise from the same assumed
> legal rule.

> The identical property argument also permeates
> defendants' factual challenges, particularly the repeated
> claim that PEP cannot trace its property.  For example,
> if Big Star filled its single sales tank with a mixture
> of 25% stolen condensate and 75% legal crude, Plains
> argues that it is mere assumption that the deliveries out
> of that tank to Plains contained 25% of stolen
> condensate.  As a matter of chemistry, Plains *might* be
> correct; it is highly doubtful, but at least
> theoretically possible, that Plains fortuitously received
> no hydrocarbon molecules traceable to PEP's Burgos Field.

> According to the UCC and property law rules
> explained at length in PEP's dispositive motion, however,
> as a matter of law, PEP *owns* 25% of the commingled mass,
> *precisely because* individual molecules are mixed together
> and no longer separable.  Since PEP *owns* a fixed
> percentage of a combined mass, when defendants bought a
> portion of the combined mass they took possession of
> PEP's property without paying PEP for that property.").

-16-

a conversion claim asserted against a defendant who purchased a
portion of a combined mass without knowing that the mass contained
converted property, the court was unwilling to create such an
exception.   The court explained that

> PEP's proportionate percentage argument is based on the
> legal principle that where one wrongfully confuses and
> commingles his goods with the goods of another, the
> wrongdoer bears the burden of pointing out his own goods
> and unless he does so, he is liable for the whole mass.
> See Holloway Seed Co. v. City National Bank, 47 S.W. 95
> (Tex. 1898).   In Holloway the Texas Supreme Court
> explained that
>
> > [t]he rule as to the confusion of goods is
> > merely a rule of evidence.   The wrongful
> > mingling of one's own goods with those of
> > another, when the question of identification
> > of the property arises, throws upon the
> > wrongdoer the burden of pointing out his own
> > goods, and, if this cannot be done, he must
> > bear the loss which results from it.   It is
> > but an application of the principle that all
> > things are presumed against the spoliator;
> > that is to say, against one who wrongfully
> > destroys or suppresses evidence.
>
> Id. at 97.   While this principle may be applicable
> against defendants such as Big Star who are alleged to
> have commingled condensate stolen from PEP with other
> hydrocarbons, the principle has no application against
> Plains Marketing because there are no allegations or
> evidence that Plains Marketing commingled PEP's
> condensate, much less that Plains Marketing did so
> wrongfully.   See Kenyon v. Bender, 174 S.W.2d 110, 112
> (Tex.Civ.App.—Beaumont 1943, writ refused w.o.m.).[27]

After summarizing the Kenyon case, the court stated

> Kenyon illustrates that plaintiffs in a conversion action
> must trace the property actually converted to the
> defendant, and may not hold defendants liable based on
> the confusion of goods principle, unless (1) the
> defendants themselves wrongfully commingled the goods, or

--------

[27]MO&O, Docket Entry No. 607, pp. 49-50.

(2) the defendants acquired the commingled goods with notice that the sellers from whom they purchased did not own all of the goods. Therefore, in order to hold Plains Marketing liable for conversion, PEP must trace condensate that was actually stolen from it in Mexico to Plains Marketing. PEP must also present evidence from which the jury could form a reasonably certain estimate of the amount of stolen condensate, if any, that Plains Marketing purchased. See Ortiz Oil[Co. v. Luttes], 141 S.W.2d [1050,] 1055 [(Tex. Civ. App. - Texarkana 1940), writ dismissed]. These issues are not required to be proven with exact certainty, only with reasonable certainty. See Southwest Battery Corp. v. Owen, 115 S.W.2d 1097 (Tex. 1938).[28]

PEP has not asked the court to reconsider its conclusions regarding the Texas standard for proving the identity of converted property. Thus, in order to hold Plains liable for conversion, PEP must trace condensate to Plains that was actually stolen from PEP. PEP must also present evidence from which a fact-finder could form a reasonably certain estimate of the amount of stolen condensate, if any, that Plains converted. See Ortiz Oil, 141 S.W.2d at 1055. The amount of condensate converted need only be proven with reasonable certainty. See Southwest Battery, 115 S.W.2d at 1098-99.

> (b)  PEP's Opposition to Plains' Motion for Summary Judgment Did Not Cite Evidence Capable of Raising a Genuine Issue of Material Fact on Conversion Claims that Are Not Time-Barred.

PEP argues that its

opposition to Plains' motion presented evidence establishing that Plains purchased stolen condensate within the limitations period. Dkt. 545 at 19-22. That evidence included a description of Plains' purchases of

---

[28]Id. at 51-52.

stolen condensate from STUSCO that originated with JAG
Energy. Id. at 21-22. It is, in fact, undisputed that
Plains purchased hydrocarbons from STUSCO in George West,
Texas from June 2008 through November 2010. *Id.* PEP's
opposition sets forth evidence that shows to a reasonable
certainty that STUSCO sold Plains stolen condensate that
STUSCO had purchased from JAG.

> Thus, even though PEP was not addressing the issue
> of whether Plains purchased stolen condensate after
> May 29, 2009, it nonetheless presented sufficient
> evidence to create a fact question on the issue.[29]

At pages 21-22 of its response in opposition to Plains' motion for

summary judgment, PEP asserted that

> [f]rom around June 2008 through about November 2010,
> STUSCO also sold hydrocarbons to Plains at Plains' George
> West facility. Exhibit 18:17-20; 54:4-12. Some of this
> was JAG's condensate. Exhibit 53 at 67. STUSCO's
> records show multiple deliveries of "Burgus"
> products—including Burgus 2—to George West during the
> time that STUSCO was selling to Plains at George West.
> Exhibit 56-579. Vrana's understanding is that Burgus 2
> referred to condensate. Exhibit 53 at 121-122. Steve
> McClenathan, a Plains crude trader for the region,
> confirmed that Plains bought condensate from STUSCO.
> Exhibit 55 at 32-33. He knows this because Plains spot-
> checked the trucks. *Id.* at 35.[30]

The statements in PEP's response in opposition to Plains' motion

for summary judgment are not evidence, and for the reasons

explained below, the evidence referenced at pages 21-22 is not

capable of raising a genuine issue of material fact for trial on

PEP's conversion claims that are not time-barred.

---

[29]PEP's Motion for Partial Reconsideration, Docket Entry
No. 620, p. 7 (citing PEP's Opposition to Defendants' Dispositive
Motions, Docket Entry No. 545).

[30]PEP's Opposition to Defendants' Dispositive Motions, Docket
Entry No. 545, pp. 21-22.

As evidence that Plains purchased hydrocarbons from STUSCO within the limitations period, PEP cites Exhibits 18 and 54 to its response in opposition (Docket Entry No. 545).  Exhibit 18 is the deposition of Felipe Eguia Lis Ramos, a marketer of petrochemicals for PEMEX.  The testimony from Felipe Eguia Lis Ramos's deposition cited by PEP does not support PEP's effort to raise a fact issue on conversion claims that are not time-bared because at the cited pages Ramos testified about events that occurred in approximately January of 2008,[31] when he was marketing basic petrochemicals, not natural gas condensate.[32]  Exhibit 54 consists of eight invoices for condensate transactions between JAG Energy and STUSCO, all of which are dated November 2008, well before the limitations cut-off date of May 29, 2009.

As additional evidence that STUSCO purchased stolen condensate from JAG, PEP cites Exhibits 53, 55, and 56 to its response in opposition (Docket Entry No. 545).  Exhibit 53 is the deposition of Ed Vrana, a lease crude trader for STUSCO who dealt with crude oil and condensates.[33]  Exhibit 55 is the deposition of Steve McClenathan, Plains' corporate representative designated to testify about Plains' purchases and sales to designated parties from 2006

---

[31]Deposition of Felipe Eguia Lis Ramos, Exhibit 18 to PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545-18, p. 16:18-19 ("Okay.  I want to move now to the period, approximately, January of 2008.")

[32]Id. at 17:1-2.  See also id. at 17:3-5.

[33]Deposition of Ed Vrana, Exhibit 53 to PEP's Opposition, Docket Entry No. 546-25, p. 11:1-20.

through 2012.[34]   Exhibit 56 purports to be a list of "STUSCO's records show[ing] multiple deliveries of 'Burgus' products — including Burgus 2 — to George West during the time that STUSCO was selling to Plains at George West."[35]

At page 67 of his deposition cited by PEP, Vrana testified that he believed that the product STUSCO delivered to Plains "would have contained some of the JAG condensate,"[36] as well as some of the JAG crude.[37]   At pages 121 and 122 of his deposition cited by PEP, Vrana testified that the designation "Burgus 2" and "Burgus 3" on STUSCO documents referred to condensate.[38]   But none of the pages of Vrana's deposition cited by PEP contain testimony from which a fact-finder could (1) conclude that condensate that STUSCO purchased from JAG was stolen from PEP, or (2) form a reasonably certain estimate of the amount of stolen condensate, if any, that STUSCO received from JAG and transferred to Plains.[39]   Instead,

---

[34]Deposition of Steve McClenathan, Exhibit 55 to PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 546-27, p. 9:5-25.

[35]PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545, p. 22 (describing Exhibit 56 thereto, Docket Entry No. 546-28).

[36]Deposition of Ed Vrana, Exhibit 53 to PEP's Opposition, Docket Entry No. 546-25, p. 67:15-16.

[37]Id. at 67:17-18.

[38]Id. at 121-122.

[39]PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545, p. 21 (PEP asserted that "JAG Energy operated at least two crude gathering facilities in Edinburg, Texas from 2006-
(continued...)

Vrana testified that the product STUSCO delivered to Plains came from "all over South Texas,"[40] and when asked to estimate the number of leases from which that product came, Vrana said: "A general estimate's going to be somewhere between 200 and 300 leases."[41]

At the pages of his deposition cited by PEP, McClenathan testified that although Plains had contracted to purchase crude oil from STUSCO at George West, Texas, he believed that Plains received natural gas condensate as well as crude oil.[42] But like the pages of Vrana's deposition on which PEP relies, none of the pages of McClenathan's deposition cited by PEP contain testimony from which a fact-finder could (1) conclude that condensate that STUSCO purchased from JAG was stolen from PEP, or (2) form a reasonably certain estimate of the amount of stolen condensate, if any, that

---

[39](...continued) 2009[, and . . . u]sed these facilities to receive Mexican condensate it was purchasing from multiple importers," but PEP did not cite any evidence from which a reasonable fact-finder could conclude either that JAG Energy sold STUSCO condensate stolen from PEP, or that if JAG Energy did sell STUSCO condensate stolen from PEP, it did so within the limitations period. The only evidence of sales from JAG Energy to STUSCO are invoices dated November 2008 included in Exhibit 54 to PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 546-26. PEP's response in opposition does not cite any evidence showing how, when, or where JAG Energy acquired stolen condensate that it allegedly sold to STUSCO.).

[40]Deposition of Ed Vrana, Exhibit 53 to PEP's Opposition, Docket Entry No. 546-25, p. 69:20.

[41]Id. at 69:24-25.

[42]Deposition of Steve McClenathan, Exhibit 55 to PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 546-27, pp. 32:22-33:4.

STUSCO received from JAG and transferred to Plains.  McClenathan merely stated that there was a "contract for Shell's sale to Plains of South Texas sweet type crude oil starting in June of 2008."[43]

PEP asserts in its response in opposition to Plains' motion for summary judgment that Exhibit 56 is a list of "STUSCO's records show[ing] multiple deliveries of 'Burgus' products—including Burgus 2—to George West during the time that STUSCO was selling to Plains at George West."[44]  The vast majority of the entries on this list pre-date the limitations period cut-off date of May 29, 2009, but a few entries do reflect dates from the latter half of 2009. However, as Plains argued in reply to PEP's response in opposition, Exhibit 56 does not constitute admissible evidence capable of raising a fact issue for trial because "this document is not authenticated and contains hearsay."[45]

In its motion for summary judgment Plains asserted the absence of facts supporting the elements of PEP's conversion claims. Because the moving party, Plains, did not bear the burden of proof on the elements of conversion, Plains was not required to negate the existence of facts and, therefore, satisfied its burden. Rule 56(c) required PEP to come forward with evidence that could

---

[43]Id. at 29:2-31:8.

[44]PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545, p. 22 (describing Exhibit 56 thereto, Docket Entry No. 546-28).

[45]Plains Marketing, L.P.'s Reply in Support of Motion for Summary Judgment, Docket Entry No. 567, p. 12.

uphold a jury verdict in its favor. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075-76 & n.16 (5th Cir. 1994) (<u>en banc</u>) (citing <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553-2554 (1986)). Moreover, PEP has not offered any testimony or other evidence capable of establishing that any of the transactions listed in Exhibit 56 and dated on or after May 29, 2009, involved reasonably certain amounts of condensate that was stolen from PEP. Thus, the court concludes that the evidence cited in PEP's opposition to Plains' motion for summary judgment and referenced in PEP's motion for partial reconsideration does not raise a genuine issue of material fact for trial on PEP's conversion claims that are not time-barred because that evidence would not allow a reasonable fact-finder (1) to conclude that Plains purchased condensate that was stolen from PEP in Mexico during the limitations period, or (2) to form a reasonably certain estimate of the amount of stolen condensate, if any, that Plains purchased during the limitations period.

> (c) PEP's Motion for Partial Reconsideration Does Not Cite Additional Evidence Capable of Raising a Genuine Issue of Material Fact on Conversion Claims that Are Not Time-Barred.

PEP argues that if it

had been required to specifically address whether Plains purchased stolen condensate after May 29, 2009, it would have presented the same background information to the Court, but would have gone further. For example, PEP would have outlined its evidence establishing the trail of stolen condensate in February 2010 through Hector

Webber's company, Exco Petroleum, to Big Star Gathering (clearly labeled as from "Mexico") to St. James Energy, to Kemco Resources, and finally to Plains.  Exhibit A. As described in PEP's opposition, Webber did not have a legitimate source of Mexican hydrocarbons, so every downstream purchaser of that condensate is liable to PEP for conversion.  Dkt. 545 at 15-16.[46]

Exhibit A to PEP's motion for partial reconsideration consists of three Monthly Transportation and Storage Reports from the Railroad Commission of Texas Oil and Gas Division, dated February 2010.  The first report bears registration number T1-02-0763 and shows that Big Star Gathering Ltd. L.L.P. received 9,096 barrels of crude oil from Exco Petroleum, Inc. -- crude oil that Exco received from Mexico.  The second report bears registration number T1-02-0786 and shows that St. James Energy Operating, Inc. received from Big Star Gathering Ltd. L.L.P. at Swinney Switch Yard RRC Number T1-02-0763 in the amount of 11,107 barrels, and delivered 2,833 barrels of that amount to Age Refining, Inc. (RRC Number T1-01-0717), and 8,274 barrels of that amount to Kemco Resources, Inc. (RRC Number T1-01-0737).  The third report bears registration number 01-0737 and shows that Kemco Resources, Inc. received from St. James Energy Operation at Swinney Switch Yard the amount of 8,274 barrels (RRC Number 02-0786).  As evidence that the crude oil reflected on the first report bearing registration number T1-02-0763 was stolen, PEP cites pages 15-16 of its response in opposition to Plains' motion for summary judgment which, in turn,

---

[46]PEP's Motion for Partial Reconsideration, Docket Entry No. 620, pp. 7-8.

cites pages 50-51 of the deposition of Exco Petroleum's owner, Hector Webber.[47]  There, Webber testified that he never dealt with Pemex, and never received any document from Pemex saying that he had the right to sell natural gas condensate.[48]  Webber testified that, instead, he "got things from Chuy, Guerra and Freddy" who he identified as salesmen or brokers.[49]

The evidence that PEP has cited in its motion for partial reconsideration does not raise a genuine issue of material fact for trial on the conversion claims asserted against Plains that are not time-barred because none of that evidence shows sales to or from Plains.  PEP acknowledges this gap in the chain of evidence in a footnote:  "The final invoice in this chain of evidence, showing Kemco's sale to Plains, has been marked 'confidential' pursuant to the protective order in force in this lawsuit.  PEP will supply a copy of the invoice to the Court upon request."[50]  Since much of the evidence submitted by PEP both in opposition to Plains' motion for summary judgment and in support of its own dispositive motion is marked "confidential," the confidential nature of the invoices

---

[47]PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545, p. 22 (citing Exhibit 23 thereto, Deposition of Hector Webber, Docket Entry No. 545-24, pp. 50-51).

[48]Deposition of Hector Webber, Exhibit 23 to PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545-24, pp. 50-51.

[49]Id. at 51:4-5.

[50]PEP's Motion for Partial Reconsideration, Docket Entry No. 620, p. 7 n.3.

should not have prevented PEP from submitting them to the court. Nevertheless, assuming without deciding that PEP could produce invoices showing that Kemco made sales to Plains in February of 2010, PEP has failed to cite evidence from which a fact-finder could reasonably conclude that any such sales involved condensate that was stolen from PEP in Mexico.   Only one of the Railroad Commission transaction reports attached to PEP's motion for reconsideration identifies the product being transferred, and that report identifies the product as crude oil — not natural gas condensate — that Exco Petroleum received from Mexico and sold to Big Star Gathering.   PEP cites no evidence that the transactions reflected by the Texas Railroad Commission transaction reports attached to its motion for reconsideration involved natural gas condensate.

Exco Petroleum's owner, Hector Webber, testified that he created Exco Petroleum in 2010, and that at that time he "wasn't buying natural gas condensate" but, instead, "blend chemicals," that was "50, 60 percent naphtha and 10 percent whatever."[51]  Webber also testified that he stopped trading in natural gas condensate in 2009 because "the Mexican supplier could not get the custom broker to export anymore because of some new law."[52]  PEP has not cited any evidence from which a reasonable fact-finder could conclude that in

---

[51]Deposition of Hector Webber, Exhibit 23 to PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545-24, pp. 29:18 - 30:30:14.

[52]Id. at 52:3-11.

2010 Webber was not trading "blend chemicals," but was instead trading natural gas condensate. Nor has PEP cited any evidence capable of establishing that the "blend chemicals" Webber was trading included natural gas condensate. Since the allegations in this lawsuit are that the converted property at issue was natural gas condensate, the evidence attached to PEP's motion for partial reconsideration does not raise a genuine issue of material fact for trial on PEP's conversion claims that are not time-barred because that evidence would not allow a reasonable fact-finder (1) to conclude that Plains purchased natural gas condensate that was stolen from PEP in Mexico during the two-year limitations period, or (2) to form a reasonably certain estimate of the amount of stolen natural gas condensate that Plains purchased.

## C.   Conclusions

For the reasons explained above, the court concludes that PEP's motion for partial consideration should be denied because PEP has not carried its burden of showing either (1) that the court granted Plains relief it did not request, or (2) that there exists evidence from which a fact-finder could conclude that Plains converted reasonably certain amounts of stolen condensate within the limitations period.

## III.   PEP's Motion for Certification of an Interlocutory Appeal and Stay of Proceedings

Citing 28 U.S.C. § 1292(b), PEP moves the court to certify the Memorandum Opinion and Order dated October 20, 2011 (Docket Entry

No. 292), and the Memorandum Opinion and Order dated September 30, 2013 (Docket Entry No. 607), for interlocutory appeal and to stay both this proceeding and the related proceeding before this court, Pemex Exploracion y Produccion v. Murphy Energy Corporation, et al., 4:12-cv-01081, until the resolution of the interlocutory appeal.[53]  Defendants argue that PEP's motion for certification of interlocutory appeal and stay of proceedings should be denied.[54]

## A.   Standard of Review

28 U.S.C. § 1292(b) provides for interlocutory appeal when an order not otherwise appealable satisfies three distinct criteria: (1) the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion as to that question; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.  See Clark-Dietz and Associates-Engineers, Inc. v. Basic Construction Co., 702 F.2d 67, 69 (5th Cir. 1983).  Determining whether a question of law is controlling requires courts to distinguish

---

[53]PEP's Motion for Certification and Stay, Docket Entry No. 621, p. 1.

[54]See Defendants' Response to PEMEX Exploración y Producción's Motion for Certification of an Interlocutory Appeal and for Stay of Proceedings ("Defendants' Response to PEP's Motion for Certification"), Docket Entry No. 627, and Defendant Plains Marketing, L.P.'s Response to Plaintiff Pemex Exploracion y Produccion's Motion for Certification of an Interlocutory Appeal and for a Stay of Proceedings, Docket Entry No. 630 (adopting and incorporating by reference Defendants' Response to PEP's Motion for Certification).

between disagreements based on questions of law and questions that turn on the facts.  Fact review questions are inappropriate for § 1292(b) review.  <u>Id.</u> (denying § 1292(b) petition where issues presented "appear to be merely fact-review questions").  Courts have found issues of law controlling if reversal of the district court's opinion would terminate the action or materially affect the outcome of the litigation.  <u>Ryan v. Flowserve Corp.</u>, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) (citing, e.g., <u>Klinghoffer v. S.N.C. Achille Lauro</u>, 921 F.2d 21, 24 (2d Cir. 1990)).  Substantial grounds for difference of opinion exist where

> a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

<u>Id.</u> at 723-24.  "But simply because a court is the first to rule on a question or counsel disagrees on the applicable precedent does not qualify the issue as one over which there is substantial disagreement."  <u>Id.</u> at 724.  Whether an immediate appeal may materially advance the ultimate termination of the litigation requires courts to assess whether interlocutory appeal will speed up or slow down the litigation.  <u>See Tesco Corp. v. Weatherford International, Inc.</u>, 722 F. Supp. 2d 755, 767 (S.D. Tex. 2010).

Because the policy of appellate jurisdiction disfavors piecemeal appeals, all three criteria must be met for a court to grant a motion for interlocutory appeal.  <u>Clark-Dietz</u>, 702 F.2d at

69 ("Section 1292(b) appeals are exceptional.  They are permitted only when there is a substantial difference of opinion about a controlling question of law and the resolution of that question will materially advance, not retard, ultimate termination of the litigation.").  See also Matter of Ichinose, 946 F.2d 1169 (5th Cir. 1991).   Moreover, the Fifth Circuit follows the rule that "[u]nder § 1292(b) it is the order, not the question that is appealable."  Castellanos-Contreras v. Decatur Hotels, LLC, 622 F.3d 393, 398 (5th Cir. 2010) (en banc) (citing Yamaha Motor Corp., U.S.A. v. Calhoun, 116 S. Ct. 619, 623 (1996) ("As the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court.  The court of appeals may not reach beyond the certified order to address other orders made in the case.").  The decision to certify interlocutory appeal is within the district court's discretion.   Swint v. Chambers County Commission, 115 S. Ct. 1203, 1210 (1995); United States v. Caremark, Inc., 634 F.3d 808, 814 (5th Cir. 2011).

## B.  Analysis

PEP seeks leave to appeal "two controlling issues of law — limitations and responsible third parties"[55] — that it argues satisfy the § 1292(b) requirements for interlocutory appeal.  In

---

[55]PEP's Motion for Certification and Stay, Docket Entry No. 621, p. 4.

addition, PEP contends that "[o]verlaying these two issues are the issues related to Mexican law, including the elements set out in the Official Opinion of the Mexican Attorney General, including the imprescriptibility of Mexico's sovereign property.   Dkt. 303-3, at 3."[56]   PEP argues that "[t]hese issues are clearly controlling [because] they substantially determine the result and scope of trial."[57]

1.   <u>Memorandum Opinion and Order of September 30, 2012</u>

The court addressed the parties' disputes over limitations in the MO&O of September 30, 2013.   PEP argues that

> [a]s to limitations, at least four opinions of the Fifth Circuit have stated that the "statute begins to run when a plaintiff knows or in the exercise of reasonable diligence should know that the property has been converted." . . .
>
> The defendants argued, and this Court agreed, that recent opinions by the Texas Supreme Court, chiefly *HECI Exploracion Co. v. Neel*, altered this historical common law rule, but the Fifth Circuit has yet to alter its existing precedent. *See id.*, 982 S.W.3d 881 (Tex. 1999).
>
> The lack of clarity is particularly true as to sovereign property.   The Mexican Attorney General established that the stolen condensate is the "imprescriptible" sovereign property of Mexico.   Given that sovereign nature, United States Law confirms that such sovereign rights cannot be lost absent an affirmative act by the sovereign. *E.g., Sea Hunt, Inc. v. Unidentified Shipwrecked Vessel or Vessels*, 221 F.3d 634 (4th Cir. 2000) (sovereign vessel "remains the property of the nation to which it belonged at the time of sinking unless that nation has taken formal action to

---

[56]<u>Id.</u>

[57]<u>Id.</u>

abandon it or to transfer title to another party"); *see also* Dkt. 545 (PEP's opposition to defendants' motions to dismiss).[58]

In support of its argument that the court misapplied the Texas Supreme Court's decision in <u>HECI</u>, 982 S.W.3d at 881, PEP cites <u>Crossland v. Canteen Corp.</u>, 711 F.2d 714, 727 (5th Cir. 1983), <u>Connor v. Hawkins</u>, 9 S.W. 684 (1888), and <u>Price v. United States</u>, 707 F. Supp. 1465 (S.D. Tex. 1989), <u>rev'd on other grounds</u>, 69 F.3d 46 (5th Cir. 1995), <u>cert. denied</u>, 117 S. Ct. 295 (1996).

> Defendants argue that
>
> while application of the two-year statute of limitations is certainly largely dispositive of a majority of PEP's claims, it is not a controlling question of law under Section 1292(b) because the Court found no fact issue as to whether PEP knew or should have known of the allegedly stolen condensate.[59]

Asserting that "PEP does not, and cannot, offer any legal authority that conflicts with the Court's Order on limitations,"[60] defendants argue that "[n]othing in <u>Crossland</u> . . . [or the other cases cited by PEP] conflicts with the Court's application of the discovery rule in this case."[61]

PEP's contention that the court misapplied the Texas Supreme Court's holding in <u>HECI</u> in its analysis of the parties' limitations

---

[58]<u>Id.</u> at 4-5.

[59]Defendants' Response to PEP's Motion for Certification, Docket Entry No. 627, p. 2.

[60]<u>Id.</u> at 5.

[61]<u>Id.</u>

arguments raises a disagreement on applicable precedent that does not qualify as a controlling question of law over which there is substantial disagreement.  See Ryan, 444 F. Supp. 2d at 724.  The court cited HECI in its discussion of the Texas discovery rule:

> The discovery rule defers the running of limitations if "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable."  S.V. [v. R.V., 933] S.W.2d [1,] 6 [(Tex. 1996)].  "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence."  Id. at 7 (citing Computer Associates International, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex. 1996)).  **The discovery rule is applied to categories of cases where the nature of the injury is inherently undiscoverable, not to particular cases.  HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998).**  The objectively verifiable element of the discovery rule is typically satisfied when the facts upon which liability is asserted can be demonstrated by direct, physical evidence. [S.V., 933 S.W.2d at 6.  See also [i]d. [at 15.]  The Texas Supreme Court has held that expert testimony is not sufficient to satisfy the objective verification prong of the discovery rule, id. (citing Robinson [v. Weaver], 550 S.W.2d [18,] 21 [(Tex. 1977)], but that confessions, criminal convictions, and records or written statements showing contemporaneous physical injury resulting from the alleged conduct can be sufficient to satisfy the objective verification prong of the discovery rule.  Id. at 15.[62]

PEP's contention that the Fifth Circuit has yet to alter its existing precedent to bring it in line with HECI's holding that the discovery rule is to be applied to categories of cases as opposed to particular cases is not supported by any of the cases cited in

---

[62]MO&O, Docket Entry No. 607, p. 29 (emphasis added).  See also id. at 75-76 (analyzing claims against Plains Marketing), 98 (analyzing claims against BASF and BFLP), and 123 (analyzing claims against Murphy Energy).

PEP's motion, and is simply not correct.  In TIG Insurance Co. v. Aon Re, Inc., 521 F.3d 351 (5th Cir. 2008), the Fifth Circuit favorably cited HECI for exactly the same principle that this court cited HECI in the MO&O of September 30, 2013.  There the Fifth Circuit stated:

> Importantly, the Texas court explained that whether the discovery rule applies is determined *categorically*:
>
> [The Supreme Court of Texas] explained in *Altai* that the applicability of the discovery rule is determined categorically.  Although the particular injury in *Altai* may not have been discovered, it was the type of injury that generally is discoverable by the exercise of reasonable diligence. . .

Id. at 358 & n.34 (citing HECI, 982 S.W.2d at 886, and Altai, 918 S.W.2d at 457).  PEP's argument that the court misapplied HECI's holding is also contradicted by the response in opposition that PEP filed to defendants' motions for summary judgment, where PEP acknowledged the applicability of HECI's holding:  "The defendants concede that the discovery rule is applied to 'categories of cases,' not *ad hoc* to particular fact scenarios."[63]

Moreover, the cases that PEP cites in support of its argument that the court's limitations decisions constitute controlling issues of law about which there is substantial ground for difference of opinion are all inapposite.  Connor, 9 S.W. at 684 (1888), and Price, 707 F. Supp. at 1472, are inapposite because

---

[63]PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545, p. 28.

they both involve claims for adverse possession whereas the claims at issue here are conversion claims. Crossland is inapposite because it belongs to the category of conversion cases in which the defendant's initial possession of allegedly converted property was lawful as opposed to unlawful. For reasons explained in various sections of the September 30, 2013, MO&O, the court rejected PEP's argument that the conversion claims asserted in this case arise from initially lawful possessions of PEP's property.[64]

Because PEP's contention that the court misapplied the Texas Supreme Court's holding in HECI, 982 S.W.2d at 881, merely challenges the court's application of well established Texas law, and because PEP has not cited any contradictory opinions from either the Fifth Circuit or the Texas Supreme Court, whether the court misapplied HECI's holding is not a controlling question of law about which there is substantial ground for difference of opinion. Moreover, based on PEP's own admissions that it knew that its condensate was being converted by sale in the United States at or near the time of the thefts in Mexico, the court held in the alternative that PEP failed to cite any evidence from which a reasonable fact-finder could conclude that had PEP exercised

---

[64]MO&O, Docket Entry No. 607 at 75-83 (regarding claims against Plains), 98-102 (regarding claims against BASF and BFLP), and 123-26 (regarding claims against Murphy Energy). See PEP's Opposition to Defendants' Dispositive Motions, Docket Entry No. 545, pp. 24-26 (arguing that "Conversion does not occur until the taking is 'unlawful,' and the good faith purchase of stolen goods is not unlawful until ownership is demonstrated and rejected").

reasonable diligence PEP could not have discovered that the individual defendants purchased its condensate within the two-year period following the dates on which those purchases occurred, reversal of the court's limitations decisions would have no material affect on the outcome of the litigation.

Asserting that an interlocutory appeal would materially advance the termination of the litigation, PEP argues that

> [a]s this Court is aware, PEP raised claims for its lost condensate in three lawsuits, two of which have been consolidated.  Therefore, there will be two trials that relate to the issues that would be resolved in the requested interlocutory appeal.  Following those two trials, there will be two appeals, since PEP will be compelled to appeal even if PEP prevails on all grounds remaining.  If PEP is successful on appeal, then the number of trials could rise to four.

> On the other hand, any ruling by the Fifth Circuit will reduce the likelihood of trial.  Whether the Fifth Circuit affirms or reverses this Court's Orders, the parties will know their rights with finality, and can then resolve the issues outside of court.  At a minimum, trial will be narrowed.

> Moreover, in this case, the inherent delay of an interlocutory appeal is a relatively insignificant issue because, due to unavoidable issues beyond any party's control, there will be no trial for months, with or without an appeal.[65]

---

[65]PEP's Motion for Certification and Stay, Docket Entry No. 621, pp. 3-4.  See also id. at 2 (PEP explains that

> these lawsuits are of immense importance to the Mexican oil industry.  The lawsuits were launched by the production and exploration subsidiary of the Mexican national oil company, PEMEX, and the Mexican Attorney General issued her official declaration in support of PEP's claims, including that Mexico's sovereign property is constitutionally imprescriptible.  Dkt. 303.

(continued...)

PEP's argument that an interlocutory appeal might result in fewer trials and, therefore, materially advance the litigation because the parties will know their respective legal rights and settle their disputes in an argument that could be made in every case involving an order on a legal issue.  Defendants assert and PEP does not dispute that regardless of the outcome of an interlocutory appeal, a trial will be required.[66]  Since, moreover, PEP seeks an interlocutory appeal in hopes of reversing the court's determination that the discovery rule does not apply, an immediate appeal could only slow -- not speed -- the ultimate termination of the litigation because the court held in the alternative that even if this were a case to which the discovery rule applied, that rule would not defer the running of limitations for PEP's time-barred conversion claims.  The court explained that PEP failed to present evidence capable of raising fact issues for trial with respect to whether the discovery rule could be applied to the time-barred conversion claims asserted against Plains, BASF and BFLP, and

---

[65] (...continued)
     These factors lead to another inescapable conclusion — There will be an appeal of these matters.  PEP is required by Mexican law to protect the national patrimony.  The procedural issue is whether there will be two lengthy trials, and then two appeals, or a single interlocutory appeal that could expedite the resolution of both lawsuits without the need for trial.

[66]Defendants' Response to PEP's Motion for Certification, Docket Entry No. 627, p. 2.

Murphy Energy.[67]  Consequently, reversal of the court's determina-
tion that the discovery rule does not apply in this case would have
no material effect on the outcome of the litigation.  Accordingly,
the court concludes that PEP has failed to carry its burden of
showing that an immediate appeal may materially advance the
ultimate termination of the litigation.

     2.   <u>Memorandum Opinion and Order of October 20, 2011</u>

     In its October 20, 2011, MO&O the court denied PEP's motion
for application of Mexican law and granted defendants' motions to
designate responsible third parties.  PEP argues that these
decisions constitute controlling questions of law about which there
are substantial grounds for difference of opinion because

> [t]he jurisprudence surrounding Chapter 33 to the Texas
> Civil Practices and Remedies Code is . . . uncertain.
> The Texas Supreme Court has been required repeatedly to
> set Chapter 33's boundaries in relation to other statutes
> and the common law.  The conflict between the Chapter 33
> and the UCC and common law rule in this case is
> manifest—Under the common law, the purchaser from a thief
> always lost (because the purchaser received no title)
> even if the owner failed to protect the property, while,
> pursuant to Chapter 33, an innocent purchaser effectively
> obtains title because the thief is at greater fault.
> Thus, while on one hand, this Court noted that the
> defendants were not entitled to a good faith purchaser
> defense, on the other hand, the Court effectively allows
> them the same defense under Chapter 33.
>
> Applying Chapter 33 to the sovereign property of a
> foreign nation is even more troublesome.  Pursuant to
> this Court's interpretation of Chapter 33, in order to

---

[67]MO&O, Docket Entry No. 607, pp. 75-83 (Plains), 98-102 (BASF
and BFLP), and 123-26 (Murphy Energy).

determine if PEP can recover for its lost property, a
jury must determine if PEP adequately protected that
property.  PEP respectfully suggests that it should be
entitled to a review of this Court's denial of the
application of Mexican law before it has to defend in a
court of law its actions in protecting Mexico's
patrimony.  It is unlikely the US government would want
its right to the return of its property judged under the
rules of another nation.  In this regard, PEP notes that
the United States Supreme Court has explained that any
encumbrance on sovereign property implicates sovereign
rights.  *See Permanent Mission of India to the United
Nations v. City of New York*, 551 U.S. 193, 204 (2007).[68]

PEP's contention that the court erred either by denying PEP's

motion for application of Mexican law, or by granting defendants'

motion to designate responsible third parties in the MO&O of

October 20, 2011, does not qualify as a controlling question of law

over which there are substantial grounds for disagreement.

In support of it's position on the applicability of Mexican

law, PEP cites two cases, neither of which supports PEP's position:

<u>Permanent Mission of India to the United Nations v. City of

New York, New York</u>, 127 S. Ct. 2352 (2007), and <u>Sea Hunt, Inc. v.

Unidentified Shipwrecked Vessel or Vessels</u>, 221 F.3d 634 (4th Cir.

2000), <u>cert. denied</u>, 121 S. Ct. 1079 (2001).  In <u>Permanent Mission

of India</u>, 127 S. Ct. at 2352, the Supreme Court analyzed a

United States statute applying a city property tax to India's

immovable property in New York City.  In <u>Sea Hunt</u>, 221 F.3d at 634,

the Fourth Circuit analyzed United States law and several treaties

---

[68]PEP's Motion for Certification and Stay, Docket Entry
No. 621, pp. 5-6.

that the United States had signed to determine the obligations owed to a foreign country's shipwrecked vessel. Both cases are inapposite because neither involved analysis of choice-of-law rules or proof of relevant foreign law. In contrast, this court denied PEP's motion for application of Mexican law in its October 20, 2011, MO&O only after concluding that choice-of-law principles required the application of Texas law to PEP's claims, and that PEP failed to carry its burden of establishing the relevant foreign law it was asking the court to apply.

PEP fails to cite any legal authority that is contrary to the court's decisions on the applicability of Mexican law. Instead, PEP offers only its own disagreement with the court's rulings. Simply because a court is the first to rule on a question, or because counsel disagrees with the court's application of established law to the facts does not qualify the question as one over which there is substantial disagreement. Ryan, 444 F. Supp. 2d at 724. Nor has PEP cited any basis for the court to conclude that reversal of its denial of PEP's motion to apply Mexican law would result in termination of the case. Instead, reversal of the court's decision on this issue would slow the ultimate termination of the litigation by increasing the number of live claims and applying foreign law with which the court and many of the defendants have little familiarity.

PEP has not cited any legal authority that conflicts with the court's determination that Texas's proportionate liability statute,

Tex. Civ. Prac. & Rem. Code § 33.001, et seq., applies to PEP's conversion, conspiracy, and Texas Theft Liability Act claims. Absent conflicting legal authority, there is no substantial ground for difference of opinion with respect to the court's application of Texas's proportionate liability statute to PEP's claims. Nor has PEP cited any basis for the court to conclude that reversal of its grant of defendants' motions to designate responsible third parties would result in the ultimate termination of the litigation. While reversal of the court's decision on this issue would reduce the number of potentially responsible parties, reversal would neither eliminate the need for trial nor reduce the number of parties participating in the trial. Moreover, as evidenced by the fact that PEP waited until November 7, 2013, to file its motion for certification of interlocutory appeal for the October 20, 2011, MO&O any advantage that an "immediate appeal" of the October 20, 2011, MO&O could have provided the parties has largely been lost. See 28 U.S.C. § 1292(b) (referencing "immediate appeal").

## C.  Conclusions

The Fifth Circuit has stated that an interlocutory appeal is an exceptional remedy and "does not lie simply to determine the correctness of a judgment of liability." Clark-Dietz, 702 F.2d at 68.  For the reasons stated above, the court is not persuaded that either the September 30, 2013, MO&O (Docket Entry No. 607), or the October 20, 2011, MO&O (Docket Entry No. 292) involves controlling questions of law as to which there is substantial ground for

-42-

difference of opinion.  This action has been pending before this court for almost four years, and it is drawing close to trial.  The delays necessitated by an interlocutory appeal would only serve to delay this matter further, and would not materially advance the ultimate termination of this litigation.  Accordingly, PEP's motion for certification of either of these two orders for interlocutory appeal will be denied.

### IV.   Plains' Motion for Certification and Entry of Final Judgment Pursuant to Rule 54(b)

Plains moves the court to certify the summary judgment rendered in favor of it as a final and appealable judgment under Rule 54(b) of the Federal Rules of Civil Procedure.[69]  PEP opposes Plains' motion to certify the summary judgment as a final and appealable judgment urging the court, instead, to grant its own motion for partial reconsideration (Docket Entry No. 620), or motion for certification of an interlocutory appeal and stay of proceedings (Docket Entry No. 621).  For the reasons stated in §§ II and III, above, the court has already concluded that PEP's motions should be denied.

### A.   Standard of Review

In pertinent part Rule 54(b) provides

[w]hen an action presents more than one claim for
relief--whether as a claim, counterclaim, crossclaim, or

---

[69]Plains's Motion for Judgment, Docket Entry No. 613; Defendant Plains Marketing, L.P.'s Reply in Support of Motion for Certification and Entry of Final Judgment Pursuant to Rule 54(b), Docket Entry No. 629.

> third-party claim--or when multiple parties are involved,
> the court may direct entry of a final judgment as to one
> or more, but fewer than all, claims or parties only if
> the court expressly determines that there is no just
> reason for delay. . .

Fed. R. Civ. P. 54(b). District courts deciding whether to certify

a judgment under Rule 54(b) must determine (1) whether it is

dealing with a "final judgment," and (2) whether there is any just

reason for delay. Curtiss-Wright Corp. v. General Electric Co.,

100 S. Ct. 1460, 1464-65 (1980). A judgment is final if it is "an

ultimate disposition of an individual claim entered in the course

of a multiple claims action." Id. at 1464 (quoting Sears,

Roebuck & Co. v. Mackey, 76 S. Ct. 895, 900 (1956)).

> [I]n deciding whether there are no just reasons to delay
> the appeal of individual final judgments . . . a district
> court must take into account judicial administrative
> interests as well as the equities involved.
> Consideration of the former is necessary to assure that
> application of the Rule effectively "preserves the
> historic federal policy against piecemeal appeals."

Id. at 1465 (quoting Sears, 76 S. Ct. at 901). Rule 54(b) motions

are disfavored and should be granted only "when there exists some

danger of hardship or injustice through delay which would be

alleviated by immediate appeal." PYCA Industries, Inc. v.

Harrison County Waste Management District, 81 F.3d 1412, 1421 (5th

Cir. 1996).

## B.   Analysis

In this case the court's grant of summary judgment to Plains

on all of the claims asserted by PEP were "ultimate dispositions"

of those claims.  The only remaining claims are those that PEP has
asserted against other defendants.  As explained by Plains in its
motion for certification and entry of final judgment, this is a
case where there are substantial factual and legal differences
between PEP's claims against Plains and PEP's claims against the
remaining defendants.

PEP argues that "[u]nder the circumstances of this lawsuit,
judicial administrative interests (or judicial efficiency) would
best be served by postponing certification until all contested
questions of law are ripe for a single appeal together,"[70] but fails
to explain why the claims against Plains should not be severed from
the claims asserted against the remaining defendants.  Nor has PEP
addressed the Fifth Circuit cases cited by Plains, including H&W
Industries, Inc. v. Formosa Plastics Corp., USA, 860 F.2d 172, 175
(5th Cir. 1988), and Ackerman v. F.D.I.C., 973 F.2d 1221, 1225 (5th
Cir. 1992).  Both of these cases indicate that district courts have
broad discretion to enter Rule 54(b) judgments in a multi-party
case like this, even where similar claims remain pending against
other defendants.  Under these circumstances it would be an
unnecessary waste of resources to require Plains to continue
monitoring PEP's claims against the remaining parties, or to delay
PEP from perfecting an appeal on the claims for which the court has

---

[70]PEP's Motion for Partial Reconsideration, Docket Entry
No. 620, p. 8.

granted Plains summary judgment.  The court concludes that there is no just reason to delay entry of final judgment on the claims asserted by PEP against Plains and to direct entry of final judgment for Plains under Rule 54(b).

## V.   Murphy Energy's Motion for Attorneys' Fees and Motion to Designate Responsible Third Parties

Pending before the court are two motions filed by Murphy Energy:  Murphy Energy's Motion for Attorneys' Fees (Docket Entry No. 610) and Murphy Energy's Motion to Designate Responsible Third Parties (Docket Entry No. 618).

### A.   Murphy Energy's Motion for Attorneys' Fees

Citing Texas Civil Practices & Remedies Code § 134.0005(b) and Federal Rule of Civil Procedure 54(d)(2)(B), Murphy Energy moves for an award of attorneys' fees incurred in defense of PEP's claim under the Texas Theft Liability Act ("TTLA").  Murphy Energy explains that "[b]ased on this Court's October 1, 2013 Memorandum Opinion and Order, which ruled that PEP's claim for violation of the TTLA arising from acts that occurred before June 7, 2008 are time barred, Murphy is the prevailing party."[71]  Murphy argues that

> [u]nder rule 54(d)(2)(B), a motion for recovery of attorneys' fees and related expenses must be filed no later than fourteen days after entry of judgment, unless a statute or court order provides otherwise.  Fed. R. Civ. P. 54(d)(2)(B)(i).  The Court issued its Memorandum Opinion and Order and Final Judgment on October 1, 2013.

---

[71]Murphy Energy's Motion for Attorneys' Fees, Docket Entry No. 610, p. 2.

Murphy's motion is timely filed under Rule 54(d)(2)(B)(i).[72]

Murphy Energy's request for attorneys' fees is not warranted at this time because the court has not yet issued a final judgment with respect to the claims asserted against Murphy Energy. Although in the September 30, 2013, MO&O the court concluded that PEP's claims against Murphy Energy for conversion, equitable relief, and violation of the TTLA arising from acts that occurred before June 7, 2008, were time-barred,[73] the court also concluded that there exist genuine issues of material fact for trial on a variety of other claims that PEP has asserted against Murphy Energy, including claims for violation of the TTLA that arise from purchases that occurred after June 7, 2008.[74] Thus, the court granted in part and denied in part Murphy Energy's motion for summary judgment.[75] Because the court has not yet entered a final judgment on the claims that PEP has asserted against Murphy Energy in this action, Murphy Energy is not yet a prevailing party on the TTLA claims that PEP has asserted against Murphy Energy, and Murphy Energy's motion for attorneys' fees is premature. See Fed. R. Civ. P. 54(d)(2)(B)(i). Accordingly, Murphy Energy's motion for attorneys' fees will be denied.

---

[72]Id.

[73]MO&O, Docket Entry No. 607, pp. 120-26.

[74]Id. at 126-39.

[75]Id. at 179.

**B.   Murphy Energy's Motion to Designate Responsible Third Parties**

Citing, §§ 33.004(a) and (j) of the Texas Civil Practices and Remedies Code, Murphy Energy moves for leave to designate 39 Petróleos Mexicanos (PEMEX) employees as responsible third parties.[76]   In support of this motion, Murphy Energy asserts that

> [o]n October 29, 2013, PEP's parent company, PEMEX issued a press release announcing that authorities had arrested thirty-nine PEMEX employees for stealing PEMEX-owned oil (PEMEX Press Release).  Ex. A.   For its part, Murphy

---

[76]Sections 33.004(a) and (j) of the Texas Civil Practices and Remedies Code provide:

> (a) A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party.  The motion must be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date.
>
> . . .
>
> (j) Notwithstanding any other provision of this section, if, not later than 60 days after the filing of the defendant's original answer, the defendant alleges in an answer filed with the court that an unknown person committed a criminal act that was a cause of the loss or injury that is the subject of the lawsuit, the court shall grant a motion for leave to designate the unknown person as a responsible third party if:
>
> > (1) the court determines that the defendant has pleaded facts sufficient for the court to determine that there is a reasonable probability that the act of the unknown person was criminal;
> >
> > (2) the defendant has stated in the answer all identifying characteristics of the unknown person, known at the time of the answer; and
> >
> > (3) the allegation satisfies the pleading requirements of the Texas Rules of Civil Procedure.

Energy denies that it knowingly purchased, sold, and/or transported stolen condensate and, according to the brand new facts set forth in the PEMEX Press Release, now seeks to designate these thirty-nine Pemex employees as responsible for PEP's alleged losses.[77]

## C.   Standard of Review

Pursuant to § 33.004(a) of the Texas Civil Practice & Remedies Code, at least sixty days before trial a defendant may "designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party." Tex. Civ. Prac. & Rem. Code § 33.004(a).[78]   Section 33.011 defines a responsible third party as:

> any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these.

Tex. Civ. Prac. & Rem. Code § 33.011(6).   If a court gives leave to designate a responsible third party, and there is evidence sufficient to submit a question to the jury regarding the conduct of the party, the trier of fact determines the percentage of

---

[77]Murphy Energy's Motion to Designate Responsible Third Parties, Docket Entry No. 618, p. 2.

[78]Section 33.004(a) of the Texas Civil Practices and Remedies Code provides:

> (a) A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party. The motion must be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date.

responsibility of the claimants, defendants, settling persons, if any, and any responsible third parties. Tex. Civ. Prac. & Rem. Code § 33.003(a)(4).

Once a defendant has moved for leave to designate responsible third parties plaintiffs may object. Tex. Civ. Prac. & Rem. Code § 33.004(f). To successfully prevent designation of a responsible third party the burden is on the plaintiff to establish that

> (1) the defendant did not plead sufficient facts concerning the alleged responsibility of the [third party] to satisfy the pleading requirement of the Texas Rules of Civil Procedure; and

> (2) after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements of the Texas Rules of Civil Procedure.

Tex. Civ. Prac. & Rem. Code § 33.004(g)(1) and (2).

A court's grant of a motion for leave to designate a responsible third party does not preclude a party from later challenging the designation.

> After adequate time for discovery a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage. The court shall grant the motion to strike unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage.

Tex. Civ. Prac. & Rem. Code § 33.004(l). The burden is on the defendants to produce sufficient evidence to raise a genuine issue of fact regarding the designated party's responsibility for the

claimant's injury or damage.    Tex. Civ. Prac. & Rem. Code
§ 33.003(b).[79]

## D.  Analysis

PEP argues that Murphy Energy's motion to designate
responsible third parties should be denied or, alternatively,
stricken because the 39 individuals' responsibility for Murphy's
alleged wrongful acts is implausible on its face, and the time for
discovery ended almost eight months before Murphy Energy filed the
pending motion.    PEP argues that it is implausible that the 39
individuals are responsible for Murphy Energy's alleged wrongful
acts because the allegations against Murphy Energy are that from
late 2006 through April of 2009 Murphy Energy knowingly dealt in
natural gas condensate stolen from the Burgos field near the Texas-
Mexico border, but the information in the Press Release about the
39 individuals states that they were arrested in October of 2013 —
more than four-and-a-half years after April of 2009 when Murphy
Energy's last wrongful act is alleged to have occurred; they were
arrested for stealing oil — not natural gas condensate; and the oil
they stole came from a refinery located in the central Mexican
state of Guanajuata — not the Burgos field near the Texas-Mexico
border.    None of the facts stated in the Press Release that Murphy

---

[79]Section 33.003(b) of the Texas Civil Practices and Remedies
Code provides:  "This section does not allow a submission to the
jury of a question regarding conduct by any person without
sufficient evidence to support the submission."

Energy cites in support of its motion to designate responsible third parties are capable of showing that any of the 39 individuals named therein caused or contributed to the injuries allegedly caused by Murphy Energy.  Since Murphy Energy does not dispute PEP's assertion that the time for discovery ended approximately eight months before Murphy Energy filed the pending motion to designate responsible third parties, and since the court plans to hold docket call within the coming month and set this case for trial soon thereafter, Murphy Energy's motion to designate responsible third parties will be denied because the facts stated in the October 2013 Press Release are not sufficient to satisfy the requirements for designating third parties who may be responsible for the wrongful acts alleged against Murphy Energy.  Accordingly, Murphy Energy's motion to designate responsible third parties will be denied.

## VI.  Conclusions and Order

For the reasons stated in § II, above, PEMEX Exploración y Producción's Motion for Partial Reconsideration and Opposition to Plains Marketing, L.P.'s Motion for Certification and Entry of Final Judgment (Docket Entry No. 620) is **DENIED.**

For the reasons stated in § III, above, PEMEX Exploración y Producción's Motion for Certification of an Interlocutory Appeal and for a Stay of Proceedings (Docket Entry No. 621) is **DENIED.**

For the reasons stated in § IV, above, Defendant Plains Marketing, L.P.'s Motion for Certification and Entry of Final Judgment Pursuant to Rule 54(b) (Docket Entry No. 613) is **GRANTED**.

For the reasons stated in § V, above, Defendant/Third-Party Plaintiff Murphy Energy Corporation's Motion for Attorneys' Fees (Docket Entry No. 610) is **DENIED**, and Defendant Murphy Energy Corporation's Motion for Leave to Designate Responsible Third Parties (Docket Entry No. 618) is **DENIED**.

Docket Call will be February 21, 2014, at 3:30 p.m., in Court Room 9-B, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.

**SIGNED** at Houston, Texas, on this 11th day of February, 2014.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE