IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEMEX EXPLORACIÓN Y PRODUCCIÓN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BASF CORPORATION; BASF FINA | § | |
| PETROCHEMICALS LIMITED | § | |
| PARTNERSHIP; MURPHY ENERGY | § | |
| CORPORATION; BIO-NU SOUTHWEST, | § | CIVIL ACTION NO. H-10-1997 |
| INC. d/b/a VALLEY FUELS; US | § | |
| PETROLEUM DEPOT, INC.; ARNOLDO | § | |
| MALDONADO; JONATHAN DAPPEN; | § | |
| STEPHEN PECHENIK; TIMOTHY L. | § | |
| BRINK; CONTINENTAL FUELS, INC.; | § | |
| and HIGH SIERRA CRUDE OIL & | § | |
| MARKETING, LLC, Successor to | § | |
| PETRO SOURCE PARTNERS, LP, | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| PEMEX EXPLORACIÓN Y PRODUCCIÓN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BIG STAR GATHERING LTD L.L.P.; | § | |
| F&M TRANSPORTATION, INC.; | § | |
| JAMES JENSEN; JOPLIN ENERGY, | § | |
| LLC f/k/a HUTCHISON HAYES | § | CIVIL ACTION NO. H-11-2019 |
| ENERGY, LLC; JEFF KIRBY; | § | |
| PLAINS ALL-AMERICAN PIPELINE, | §  | |
| L.P.; SAINT JAMES OIL, INC.; | § | |
| SUPERIOR CRUDE GATHERING, INC.; | § | |
| TRANSMONTAIGNE PARTNERS, L.P.; | § | |
| and WESTERN REFINING COMPANY, | § | |
| L.P., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion to Dismiss

Three of the Six Remaining Condensate Transactions Under the One

Satisfaction Rule ("Defendants' Motion to Dismiss") (Docket Entry No. 643). In the pending motion defendants BASF Corporation ("BASF"), BASF FINA Petrochemicals Limited Partnership ("BFLP"), and Murphy Energy Corporation ("Murphy Energy") (collectively "defendants") move the court to dismiss claims asserted against them arising from three condensate transactions that occurred between January and March of 2009. At the scheduling conference held on April 29, 2014, the court stated its intention to grant the motion.[1] The court also raised the issue as to whether granting the motion would resolve all claims against Murphy Energy, and directed the parties to submit additional briefing addressing that issue.[2] On May 1, 2014, plaintiff, Pemex Exploración y Producción ("PEP") filed PEP's Brief in Support of Retaining Murphy Energy in This Lawsuit (Docket Entry No. 664); on May 2, 2014, Murphy Energy filed its Response to PEP's Brief in Support of Retaining Murphy Energy in This Lawsuit as Requested by the Court Re: 661 Minute Entry Order (Docket Entry No. 669); on May 4, 2014, plaintiff filed PEP's Reply Brief in Support of Retaining Murphy Energy in This Lawsuit (Docket Entry No. 673); and on May 5, 2014, Murphy Energy filed its Surreply to PEP's Brief in Support of Retaining Murphy

---

[1]Hearing Minutes and Order, Docket Entry No. 661.

[2]Id.

Energy in This Lawsuit (Exhibit A to Murphy Energy's Motion for Leave to File Surreply, Docket Entry No. 674-1).[3]

## I.  **Standard of Review**

Defendants have not identified the procedural basis on which they seek dismissal of claims arising from three transactions in which Murphy Energy sold allegedly stolen condensate to BASF between January and March of 2009. Nevertheless, their assertion that "since PEP fully recovered for these three transactions, it cannot seek damages from defendants,"[4] indicates that defendants seek dismissal for failure to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  A Rule 12(b)(6) motion to dismiss tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S. Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  Id.  Also, the

---

[3]On May 2, 2014, BASF and BFLP filed Defendants BASF Corporation and BASF FINA Petrochemicals Limited Partnership's Motion to Dismiss the Three Remaining Transactions (Docket Entry No. 667); and on May 6, 2014, BASF and BFLP filed BASF's and BFLP's Supplemental Motion to Dismiss Remaining Transactions (Docket Entry No. 681).  PEP has not yet responded to these latest motions to dismiss, and they will not be ripe for resolution before trial.

[4]Defendants' Motion to Dismiss, Docket Entry No. 643, p. 2.

court may not look beyond the pleadings in ruling on the motion. See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (recognizing that when considering a Rule 12(b)(6) motion, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto"). If, however, on a Rule 12(b)(6) motion to dismiss

> matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). See Atkins v. Salazar, 677 F.3d 667, 677 (5th Cir. 2011); Dillon v. Rogers, 596 F.3d 260, 265 (5th Cir. 2010). A party is on notice of the possibility that a court may convert a Rule 12(b)(6) motion into a motion for summary judgment ten days after a party submits evidence outside of the pleadings, and that evidence is not excluded by the court. See Washington v. Allstate Insurance Co., 901 F.2d 1281, 1284 (5th Cir. 1990). In Washington the Fifth Circuit explained that

> [u]nder Rule 56 it is not necessary that the district court give ten days' notice after it decides to treat a Rule 12(b)(6) motion as one for summary judgment, but rather after the parties receive notice that the court could properly treat such a motion as one for summary judgment because it has accepted for consideration on the motion matters outside the pleadings, the parties must have at least ten days before judgment is rendered in which to submit additional evidence.

901 F.2d at 1284 (quoting Clark v. Tarrant County, Texas, 798 F.2d 736, 746 (5th Cir. 1986)). See also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2554 (1986) (district courts possess the power to

enter summary judgment sua sponte as long as the losing party was on notice that he had to come forward with all of his evidence).

Defendants filed their pending motion to dismiss on February 28, 2014. Attached to defendants' motion are four exhibits that evidence matters outside of the pleadings. On March 19, 2014, plaintiff filed a response in opposition to defendants' motion to dismiss in which PEP not only referenced matters outside the pleadings but also failed to object to the court's consideration of the exhibits that defendants attached to their motion to dismiss.[5] On March 27, 2014, defendants filed a reply in support of their motion to dismiss in which they again referenced matters outside the pleadings.[6] Because both parties have either submitted or referenced matters outside of the pleadings, because PEP has not objected to the court's consideration of the defendants' exhibits, and because the court has not excluded those exhibits from consideration, Rule 12(d) directs the court to treat the Defendants' Motion to Dismiss as one for summary judgment and to dispose of it under Rule 56. See Fed. R. Civ. P. 12(d). See also Washington, 901 F.2d at 1283-1284.

---

[5]PEMEX Exploración y Producción's Opposition to Defendants' Motion to Dismiss Transactions Under the One Satisfaction Rule ("PEP's Opposition to Defendants' Motion to Dismiss"), Docket Entry No. 648.

[6]Defendants' Reply in Support of Motion to Dismiss Three of the Six Remaining Condensate Transactions Under the One Satisfaction Rule ("Defendants' Reply"), Docket Entry No. 652.

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  See also Celotex, 106 S. Ct. at 2552.  An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant.  Anderson v. Liberty Lobby, 106 S. Ct. 2505, 2510 (1986).  In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence.  Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).  The court must also disregard all evidence favorable to the moving party that the jury is not required to believe.  Id.

## II.  Analysis

Defendants argue that the claims arising from three transactions that occurred between January and March of 2009 in which Trammo Petroleum, Inc. ("Trammo") sold to BASF petrochemicals acquired from Murphy Energy are barred by the one satisfaction rule because PEP has admitted that it has been fully compensated for losses suffered in these three transactions by former defendant Trammo.[7]

## A.  Applicable Law

The one satisfaction rule prevents PEP from obtaining more than one recovery for the same injury.  Tony Gullo Motors I, L.P.

---

[7]Defendants' Motion to Dismiss, Docket Entry No. 643, p. 1.

v. Chapa, 212 S.W.3d 299, 303 (Tex. 2006) (citing <u>Stewart Title</u> <u>Guaranty Co. v. Sterling</u>, 822 S.W.2d 1, 7 (Tex. 1991)).  The one satisfaction rule "applies when multiple defendants commit the same act and when defendants commit technically different acts that result in a single injury."  <u>Crown Life Insurance Co. v. Casteel</u>, 22 S.W.3d 378, 390 (Tex. 2000) (quoting <u>Stewart Title</u>, 822 S.W.2d at 7).  <u>See also</u> <u>Christus Health v. Dorriety</u>, 345 S.W.3d 104, 114 (Tex. App. — Houston [14th Dist.] 2011, pet. denied); <u>Oyster Creek</u> <u>Financial Corp. v. Richwood Investments II, Inc.</u>, 176 S.W.3d 307, 326-27 (Tex. App. — Houston [1st Dist.] 2004, pet. denied). Whether the one satisfaction rule applies is determined not by the causes of action asserted, but by the injury sustained.  <u>AMX</u> <u>Enterprises, Inc. v. Bank One, N.A.</u>, 196 S.W.3d 202, 206 (Tex. App. — Houston [1st Dist.] 2006, pet. denied) (citing <u>Stewart Title</u>, 822 S.W.2d at 8)).

Under the one satisfaction rule a nonsettling defendant may claim a credit based on the damages for which all tortfeasors are jointly liable.  <u>Crown Life</u>, 22 S.W.3d at 391 (citing <u>First Title</u> <u>Co. of Waco v. Garrett</u>, 860 S.W.2d 74, 78 (Tex. 1993); <u>Paschall v.</u> <u>Peevey</u>, 813 S.W.2d 710, 712 (Tex. App. — Austin 1991, writ denied)).  "[A] plaintiff must only give credit to a non-settling defendant for that part of the damages which he receive[d] from settling defendants that are applicable to all equally."  <u>Hill v.</u> <u>Budget Financial & Thrift Co.</u>, 383 S.W.2d 79, 81 (Tex. Civ. App. — Dallas 1964, no writ).  "A nonsettling defendant cannot receive

credit for settlement amounts representing punitive damages."
Crown Life, 22 S.W.3d at 391 (citing Mobil Oil Corp. v. Ellender,
968 S.W.2d 917, 927 (Tex. 1998) and Hill, 383 S.W.2d at 81). Thus,
a nonsettling defendant is entitled to offset any liability for
joint and several damages by the amount of common damages paid by
the settling defendant, but not for any amount of separate or
punitive damages paid by the settling defendant. Id. at 392.

"A nonsettling party seeking a settlement credit has the
burden to prove its right to such credit." Oyster Creek, 176
S.W.3d at 327 (citing Ellender, 968 S.W.2d at 927). "This burden
includes proving the settlement credit amount." Id. "The non-
settling party can meet this burden by placing the settlement
agreement or some evidence of the settlement amount in the record."
Id. "If the nonsettling party meets this burden, the burden shifts
to the plaintiff to tender a valid settlement agreement allocating
the settlement between (1) damages for which the settling and
nonsettling defendant are jointly liable, and (2) damages for which
only the settling party was liable." Id. (citing Crown Life, 22
S.W.3d at 392). "If the plaintiff cannot satisfy this burden, then
the nonsettling party is entitled to a credit equaling the entire
settlement amount." Id.

B.    **Application of the Law to the Facts**

PEP alleges that multiple defendants — Murphy Energy, Trammo,
BASF, and BFLP — committed the same or technically different acts

-8-

that resulted in a single alleged injury to PEP:   conversion
involving _inter alia_ three transactions that occurred between
January and March of 2009 in which Trammo sold condensate to BASF
valued at approximately $2.4 million.   Specifically, PEP's Third
Amended Complaint alleges in ¶ 160(i):

> On or about January—March 2009, Donald Schroeder, Jr. and
> [Trammo] and their co-conspirators knowingly arranged for
> [Trammo's] sale of at least $2.4 million worth of stolen
> PEP condensate to Defendant[s] BASF Corpation [and BFLP],
> knowing the condensate in question to have been stolen
> from PEP in Mexico.[8]

PEP's Third Amended Complaint also alleges that Trammo originally
obtained the condensate sold to BASF from Murphy Energy.[9]

During discovery BASF asked PEP to admit that it received
restitution for the condensate that Trammo sold to BASF in the
three transactions alleged to have taken place between January and
March of 2009:

--------

[8]PEP's Third Amended Complaint, Docket Entry No. 220, ¶ 160(i).

[9]_Id._ ¶ 63 (identifying Murphy Energy as Trammo's source for
stolen condensate with respect to three 2009 transactions).  PEP's
Second Amended Complaint contained the same allegations:

> H.   On or about January-March 2009, Donald Schroeder,
> Jr. and [Trammo] and their co-conspirators knowingly
> arranged for [Trammo's] sale of at least $2.4 million
> worth of stolen PEP condensate to Defendant[s] BASF
> Corporation [and BFLP], knowing the condensate in
> question to have been stolen from PEP in Mexico.  PEP
> does not allege that Defendant BASF knew that the
> condensate in question was stolen.

(Docket Entry No. 108, ¶ 94(H))  Paragraph 94(G) of PEP's Second
Amended Complaint also made clear that the transactions referenced
in ¶ 94(H) involved Murphy Energy as Trammo's supply source.

**REQUEST FOR ADMISSION NO. 35:**

Admit that you received $2.4 million in restitution for the $2.4 million of stolen condensate referenced in ¶ 94(H) of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**
Subject to . . . Objections . . ., this request for admission is ADMITTED.[10]

Defendants argue that PEP's response to BASF's Request for Admission No. 35 constitutes a judicial admission that PEP received full restitution for the amount PEP claims in ¶ 160(i) of the Third Amended Complaint and in ¶ 94(H) of the Second Amended Complaint for the three transactions. Defendants argue that "[t]o allow PEP to continue to seek recovery from Defendants for this fully compensated injury would contravene the essence of the one satisfaction rule—it would permit PEP to seek double recovery for the same injuries."[11]

PEP does not dispute that it has been fully compensated for the three January-March 2009 transactions that involved condensate sold by Murphy Energy to Trammo and then to BASF and BFLP. Nevertheless, citing Crown Life Insurance, 22 S.W.3d at 391, and United States v. Sheinbaum, 136 F.3d 443, 448 (5th Cir. 1998),

---

[10]Plaintiff PEMEX Exploración y Producción's Responses to BASF Corporation's Requests for Admission, Exhibit 4 to Defendants' Motion to Dismiss, Docket Entry No. 643-3, p. 19. See also Defendants' Reply, Docket Entry No. 652, p. 4 n.1 (citing transcript from Donald Schroeder's sentencing where the Assistant United States Attorney not only described the compensatory and voluntary nature of the restitution that Trammo paid to PEP, but also stated that the payment fully compensated PEP for its losses).

[11]Defendants' Motion to Dismiss, Docket Entry No. 643, p. 4.

-10-

cert. denied, 119 S. Ct. 1808 (1999), PEP argues that the
defendants are not entitled to a credit for any portion of Trammo's
$2.4 million restitution payment to PEP because that payment was
punitive not compensatory in nature.[12] Citing Nowak v. Pellis, 248
S.W.3d 736, 741 (Tex. App. — Houston [1st Dist.] 2007, no pet.),
and Harrington v. Texaco, Inc., 339 F.2d 814, 820 (5th Cir. 1964),
cert. denied, 85 S. Ct. 1538 (1965), PEP argues that Defendants'
Motion to Dismiss should be denied because settlement credits, if
any, must be applied after the verdict because PEP has not been
made whole.

      1.    <u>Defendants Are Entitled to Credit for Restitution Trammo
Paid to PEP for Losses Suffered as a Result of the Three
Transactions that Occurred Between January and March of
2009</u>

In Crown Life Insurance, 22 S.W.3d at 391, the Texas Supreme
Court stated that "[u]nder the one satisfaction rule, the
nonsettling defendant may only claim a credit based on the damage
for which all tortfeasors are jointly liable. . . . A nonsettling
defendant cannot receive credit for settlement amounts representing
punitive damages." PEP's reliance on Crown Life Insurance is
misplaced because Trammo's payment of restitution is not comparable
to punitive damages but, instead, is comparable to a settlement
agreement. As PEP recognizes:

> In August 2009, Trammo, through the U.S. Department of
> Justice, paid to PEP $2.4 million in restitution in

---

[12]PEP's Opposition to Defendants' Motion to Dismiss, Docket
Entry No. 648, pp. 2-3.

connection with Trammo's involvement in trafficking
stolen Mexican condensate. . . . Trammo made this payment
in order to avoid further criminal prosecution.[13]

The fact that Trammo voluntarily paid restitution as part of an
agreement with the United States to avoid prosecution, and the fact
that the amount Trammo paid was the amount that PEP alleges it lost
due to the three transactions at issue, persuades the court that
Trammo's payment was more akin to a settlement payment than to
punitive damages.

In Sheinbaum, 136 F.3d at 444, two defendants were convicted
of conspiracy to defraud a bank and to commit bankruptcy fraud.
The issue before the court was whether the defendants' prior civil
settlement with the bank victim of their fraud precluded the
district court from ordering them to pay restitution to the bank
under the Victim and Witness Protection Act ("VWPA"). Id. at 447-
48. The Fifth Circuit concluded that since the defendants failed
to present any evidence showing what, if any, amount the defendants
had paid the bank pursuant to their prior civil settlement with the
bank, the criminal restitution order was not precluded. Id. at
448. Significantly, however, the Fifth Circuit stated that "[o]f
course, to avoid double-counting, a district court must reduce the
size of its restitution order by any amount received by the victim
as part of a civil settlement." Id. at 449 (citing 18 U.S.C.
§ 3664(j)(2)). Sheinbaum thus establishes that, unlike punitive

---

[13]Id. at 2.

damages, restitution awarded in criminal cases is intended to compensate the victims of the crime. <u>See United States v. McDaniel</u>, 398 F.3d 540, 555 (6th Cir. 2005) (noting that "the [federal] restitution statutes do not permit victims to obtain multiple recoveries for the same loss"); <u>Fishman Organization, Inc. v. Frick Transfer, Inc.</u>, 2014 WL 1673746, *2 (3d Cir. April 29, 2014) ("The Court properly determined that Fishman could not receive both restitution and damages because that would be a double recovery."); <u>United States v. Bogart</u>, 490 F. Supp. 2d 885, 901 (S.D. Ohio 2007), <u>aff'd</u> 576 F.3d 565 and 577 F.3d 713 (6th Cir. 2009) ("The VWPA contemplates setting off amounts already paid under a restitution order against amounts later recovered in civil proceedings."). <u>See also United States v. Estate of Parsons</u>, 367 F.3d 409, 413 (5th Cir. 2004) (distinguishing between restitution ordered "simply to punish the defendant" and restitution "designed to make his victims whole").

   2.   <u>Court Need Not Wait Until After the Verdict to Apply Credit for Restitution Trammo Paid to PEP</u>

Citing <u>Nowak</u>, 248 S.W.3d at 741, PEP asserts that

> [t]he one satisfaction rule is grounds for summary judgment in cases in which (1) the one satisfaction rule applies, (2) the settlement credit entirely sets-off the maximum amount of liability claimed by the plaintiff, and (3) punitive damages are not an issue.[14]

PEP argues that even if Trammo's $2.4 million restitution payment to PEP can be considered a settlement entitled to credit under

---

[14] <u>Id.</u> at 3.

-13-

Texas law, that credit does not entitle defendants to summary judgment regarding the three transactions for which PEP has been compensated because the court has already concluded that

> the amount PEP claims it is owed as a result of Trammo's sales of stolen condensate to BASF and BFLP is substantially more than $2.4 million.  Because Trammo's payment of $2.4 million to PEP does not entirely offset the maximum amount of liability claimed by PEP, BASF and BFLP are not entitled to summary judgment on any individual transactions.[15]

PEP argues that "[d]efendants offer no compelling argument or authority for assuming that 'each transaction stands on its own'—the theory on which it attempts to distinguish *Nowak*."[16] Quoting Harrington, 339 F.2d 814, 820 (5th Cir. 1964), PEP argues that "the one-satisfaction rule 'does not require that the injured party give the benefit of any statute of limitations to the judgment-torfeasor.'"[17]  PEP argues that

> [a]t trial, PEP will show that between 2006 and 2009 it was harmed by the loss of over $300 million of condensate, of which BASF/BFLP bought more than $40 million worth and Murphy bought and sold at least $14 million worth (Docket Entry No. 220 at ¶ 62).  PEP has not been made whole for that loss.  Accordingly, the one-recovery rule would not reduce PEP's recovery.[18]

PEP's reliance on Nowak and Harrington is misplaced because neither case involved facts analogous to those at issue here, where

---

[15]Id. at 4 (quoting Memorandum Opinion and Order, Docket Entry No. 607, p. 111).

[16]Id. (quoting Defendants' Motion to Dismiss, Docket Entry No. 643).

[17]Id. (quoting Harrington, 339 F.2d at 820).

[18]Id.

PEP admits that it has been fully compensated for the three transactions for which defendants seek dismissal. In <u>Harrington</u> the court specifically found that the defendant failed to offer proof that the amount received in settlement was allocable to the two-year period for which the defendant was being sued. In contrast, defendants here have presented conclusive evidence that Trammo's $2.4 million payment was made specifically to compensate PEP for the three transactions that occurred between January and March of 2009, and PEP has admitted that it has been fully paid for the losses suffered as a result of those transactions. PEP's contention that the transactions should not be evaluated individually is belied by the fact that PEP's Third Amended Complaint not only lists these transactions individually but also characterizes each transaction as a separate conversion.[19] Because PEP does not dispute that it has been fully compensated for the three transactions that occurred between January and March of 2009, and because PEP has failed to show that the restitution Trammo paid to PEP is either analogous to punitive damages or allocable to losses suffered as a result of other transactions, the court

---

[19]PEP's Third Amended Complaint, Docket Entry No. 220, ¶ 63 (setting forth 25 individual transactions which PEP alleges form the basis of its claims against BASF and BFLP). <u>See also</u> PEP's Opposition to Defendants' Motions for Summary Judgment, Docket Entry No. 545, p. 23 (asserting that "each unlawful transaction of PEP's property is a separate conversion"); PEP's Opposition to BASF & BFLP's Motions for Leave to Designate Responsible Third Parties, Docket Entry No. 266, pp. 4-5 (asserting that "each new wrongful possession by a subsequent converter is a new conversion because it represents another offense to the plaintiff's right of possession").

concludes that Defendants' Motion to Dismiss the claims arising from the three transactions that occurred between January and March of 2009 obtained from Murphy Energy should be granted.

**C.   Murphy Energy Remains A Defendant in This Action**

Footnote 3 to Defendants' Motion to Dismiss states:

> Murphy Energy notes that the one satisfaction rule applies not only to double recovery form multiple defendants, but also to double recovery from a single defendant under multiple theories of recovery. *Myriad Dev., Inc. v. Alltech, Inc.*, 817 F. Supp. 2d 946, 982-83 (W.D. Tex. 2011).  As all of the remaining causes of action against Murphy Energy are based on this same single injury, full restitution bars each of PEP's lingering theories of recovery against it. Accordingly, the Court should render final judgment for all of the claims asserted against Murphy Energy.[20]

In light of Murphy Energy's request for final judgment made in footnote 3 to the Defendants' Motion to Dismiss, the court requested additional briefing from the parties.  For the reasons stated in PEP's Brief in Support of Retaining Murphy Energy in This Lawsuit (Docket Entry No. 664) and PEP's Reply Brief in Support of Retaining Murphy Energy in This Lawsuit (Docket Entry No. 673), the court concludes that Murphy Energy remains a defendant in this action because PEP has not been fully compensated for all of the stolen condensate that PEP alleges Murphy Energy possessed.

### III.   Conclusions and Order

For the reasons stated above, Defendants' Motion to Dismiss Three of the Six Remaining Condensate Transactions Under the One

---

[20]Defendants' Motion to Dismiss, Docket Entry No. 643, p. 4 n.3.

-16-

Satisfaction Rule (Docket Entry No. 643) is **GRANTED,** but Murphy

Energy's request for final judgment dismissing it as a defendant in

this action is **DENIED**.

     **SIGNED** at Houston, Texas, on this the 7th day of May, 2014.

 

                        _____

                                 SIM LAKE
                UNITED STATES DISTRICT JUDGE